OPINION
{¶ 1} Appellants, Joan and Thomas Sant, appeal the May 20, 2005 judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of appellees Schindler Elevator Corporation ("Schindler") and Hines Interests Limited Partnership ("Hines").
 {¶ 2} Mrs. Sant is employed as a paralegal with a law firm that occupies six floors at the top of the Huntington Center building in downtown Columbus. Mrs. Sant's office is located on the 30th floor. As part of her job, Mrs. Sant regularly travels from one floor to another within the firm by way of elevators servicing the upper floors.
 {¶ 3} On October 16, 2001, Mrs. Sant took an elevator from the 30th floor to the 32nd floor, intending to speak with an attorney in her firm. The attorney was not in his office, so Mrs. Sant went back to the elevator bank to return to her office. Mrs. Sant pushed the call button and waited for an elevator car to arrive.
 {¶ 4} Inside the elevator, Mrs. Sant pressed the button to go to the 30th floor; however, instead of descending as ordered, the elevator ascended to the 34th floor, where the doors remained closed. Mrs. Sant again pushed the button for the 30th floor. This time, the elevator moved downward, but it passed the 30th floor and continued until it stopped at the 25th floor. Again, the doors remained closed. Mrs. Sant testified that the elevator began to drop intermittently from that point, falling approximately 20 times.
 {¶ 5} As these events unfolded, Mrs. Sant used the intercom system to inform the building courtesy staff that the elevator was malfunctioning. Carl Grubb and Chris Rogers were on duty that evening and informed her that they would check on the situation. Rogers then went to investigate whether he could see the position of the elevator. At one point, Rogers visually determined that the elevator was stuck about one inch below the 32nd floor, although the indicator registered its location as being at level 33. Approximately 20 minutes later, Rogers noted that the indicator showed that the elevator was at the 22nd level; however, visually, Rogers located the elevator in the blind hoistway, somewhere between the gallery level and what would be the 20th floor.
 {¶ 6} When Rogers first spotted the elevator, he informed Grubb of the situation. Grubb then used the intercom to tell Mrs. Sant that he was calling Schindler, the elevator maintenance company, to assist her. Grubb called Schindler's dispatch number at 6:40 p.m.
 {¶ 7} Mrs. Sant was trapped in the elevator for about two hours. At approximately 8:40 p.m., the elevator descended to the ground floor. The descent occurred at normal speed; however, Mrs. Sant testified that the landing was harder than usual. Mrs. Sant exited the elevator when the door opened and walked up a flight of idle escalator stairs to get to the guard desk. From there, she and the Schindler technician took a different elevator up to the 30th floor to retrieve her purse from her office. Mrs. Sant left the building without assistance. Mrs. Sant testified that she was not injured as the elevator dropped intermittently. Instead, she believes she was injured during the irregular landing.
 {¶ 8} On October 9, 2003, Mrs. Sant and her husband filed a complaint naming Schindler and Hines as defendants. The complaint asserted seven claims: (1) negligent maintenance; (2) res ipsa loquitor; (3) design defect; (4) negligent installation; (5) failure to warn; (6) negligent response; and (7) loss of consortium. On February 22, 2005, Schindler filed a motion for summary judgment. The next day, Hines filed its own motion for summary judgment. On April 28, 2005, the trial court issued a decision sustaining both motions. On May 20, 2005, the court entered judgment in favor of Schindler and Hines on all counts of the complaint.
 {¶ 9} Appellants timely filed their appeal with this court, raising a single assignment of error:
The trial court committed reversible error by granting Defendant/Appellee Schindler Elevator Corporation ("Schindler") and Defendant/Appellee Hines Interests Limited Partnership's ("Hines") motions for summary judgment on Plaintiffs/Appellants' claims for negligen[t] response and failure to warn.
 {¶ 10} Appellate review of a trial court's decision on summary judgment is de novo. Doe v. Shaffer (2000),90 Ohio St.3d 388, 390. We must independently review the record to determine whether summary judgment was appropriate. Mergenthalv. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Pursuant to Civ.R. 56, summary judgment is properly granted only when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 11} The party moving for summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding the essential elements of the claims presented. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293. Conclusory assertions that the nonmoving party cannot prove its case are not sufficient to discharge this initial burden. Id. at 293. Similarly, once the burden is satisfied, one cannot prevent summary judgment by merely restating unsubstantiated allegations contained within the original pleadings. Instead, the nonmoving party must demonstrate the continued existence of a genuine issue of material fact by directing the court's attention to relevant, affirmative evidence of the type listed in Civ.R. 56(C). Id., citing Civ.R. 56(E).
 {¶ 12} Appellants challenge the trial court's ruling regarding only two of their claims — negligent response and failure to warn. The negligent response allegation was asserted against both Schindler and Hines, while failure to warn pertains only to Schindler. We will address the latter claim first.
 {¶ 13} Appellants assert that the trial court erred by analyzing their failure to warn claim under R.C. 2307.76, Ohio's product liability statute, instead of under the common law. Appellants alleged failure to warn in count five of their complaint. Count five states, in pertinent part:
Defendant Schindler was aware, or should have been aware, of the dangers associated with the elevator located in the Huntington Center Building at the time it left Defendant Schindler's control, and Defendant Schindler failed to adequately warn or instruct consumers about the hazards associated with the elevators it designed and/or installed, as a manufacturer exercising reasonable care would have done, considering the risks and likelihood of the product causing harm.
Given the language of the complaint, it is clear that appellants, at least initially, intended to pursue their claim under the theory of product liability failure to warn.
 {¶ 14} The trial court correctly analyzed appellants' assertion of failure to warn pursuant to R.C. 2307.76. Under the statute, only the product's manufacturer is responsible for failing to adequately warn consumers of potential harm. Sean Walsh, Schindler's branch manager in Columbus, testified in an affidavit that Westinghouse Elevator Company designed and installed the elevator that malfunctioned. Appellants provide no evidence to the contrary.
 {¶ 15} Appellants' attempt to salvage the claim by arguing common law principles is not persuasive. There is no indication in the record that appellants attempted to amend the complaint to reflect this alternative theory. Further, even if the complaint was appropriately amended, appellants fail to produce any evidence or cite any case law or statutory authority supporting a common law failure to warn claim. Mere allegations that Schindler was in a superior position to know that the elevator could come to an abrupt stop, causing injury to a passenger, are not sufficient to withstand summary judgment. Accordingly, the trial court properly granted Schindler summary judgment in regard to appellants' failure to warn claim.
 {¶ 16} Appellants also charge the trial court with error for granting Schindler's motion for summary judgment on count six of their complaint: negligent response. To successfully maintain a negligence action, the party seeking to recover must prove the existence of a duty, a breach of that duty, and an injury proximately caused by the breach of duty. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 285. Thus, to defeat Schindler's motion for summary judgment, appellants must present sufficient evidence to create genuine issues of material fact as to each element of their claim.
 {¶ 17} We begin our analysis by determining whether Schindler owed appellants any duty. Appellants rely on Norman v. ThomasEmery's Sons, Inc. (1966), 7 Ohio App.2d 41, for the proposition that Schindler falls within the definition of a common carrier and must be held to the highest degree of care. In Norman, the First District Court of Appeals stated that "a passenger elevator is classified as a common carrier so that the duty owed to the passengers is to exercise the highest degree of care of which the situation is reasonably susceptible." Id. at 43. The court further observed that "operating owners and ones under contract to service and inspect must act with a higher degree of care." Id. Thus, appellants submit that Schindler, as a company under contract to service and inspect the elevator, owed the highest degree of care: the duty to provide a reasonably safe place for its passengers, which includes warning passengers against dangerous conditions that the carrier knows, or should know, exist. Conver v. EKH Co., Franklin App. No. 02AP-1307, 2003-Ohio-5033, ¶ 33.
 {¶ 18} However, in Durham v. Warner Elevator Mfg. Co.
(1956), 166 Ohio St. 31, the Ohio Supreme Court adopted a different standard. In reversing the lower court's judgment directing a verdict in favor of an elevator company on a negligent maintenance claim, the Durham court held that a company who has assumed responsibilities regarding the maintenance, servicing or inspection of an elevator is held only to a duty of ordinary care:
Where one, under a written contract, undertakes to service and examine the mechanical equipment of another and make a report on the condition thereof, and the equipment is of such a nature as to make it reasonably certain that life and limb will be endangered if such work is negligently performed, he is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and if such duty is negligently or carelessly performed whereby injury occurs to a blameless person, not a party to the contract and lawfully using such equipment, such injured person has a right of action directly against the offending contractor. Liability in such instance is not based upon any contractual relation between the person injured and the offending contractor, but upon the failure of such contractor to exercise due care in the performance of his assumed obligations.
Id. at paragraph two of the syllabus.
 {¶ 19} The precedent established in Durham reflects the standard that must be applied to the present case. Not only are we bound to follow precedent set by the Ohio Supreme Court, but we find that the standard of ordinary care represents the better view. Hendrix v. Eighth and Walnut Corp. (1982),1 Ohio St.3d 205; Heneghan v. Sears, Roebuck Co. (1990),67 Ohio App.3d 490; Hickey v. Otis Elevator Co., Franklin App. No. 04AP-826,2005-Ohio-4279; Connor v. Dover Elevator Co. (Aug. 25, 1988), Franklin App. No. 88AP-274; Banks v. Otis Elevator Co. (Dec. 17, 1987), Cuyahoga App. No. 53059. Even the First District Court of Appeals abandoned its previous holding regarding maintenance contractors. In Koepfler v. CRI, Inc. (1998), Hamilton App. No. C-970333, the court specifically held that, unlike the property owner or occupier who is regarded as a common carrier, an independent contractor retained to provide maintenance services is not held to the highest standard of care. Instead, principles of ordinary negligence must be applied. Id. See, also, Crawfordv. Millar Elevator Service Co. (May 11, 2000), Hamilton App. No. 77277.
 {¶ 20} Accordingly, pursuant to Durham and its progeny, Schindler does owe a duty to appellants, but that duty is one of ordinary care. Schindler is chargeable with performing the work contracted for in "a reasonably proper and efficient manner." Id. Further, as a matter of law, the scope of Schindler's duty to appellant is limited by the maintenance agreement between Schindler and Huntington Center Associates. Heneghan, at 494;Hickey, at ¶ 30. Thus, appellant must demonstrate that Schindler failed to exercise ordinary care in its obligations under the agreement in order to successfully establish her negligence claim.
 {¶ 21} Under the "Building Services Contract" executed between Schindler and the Huntington Center Associates, Schindler agreed to assume specific responsibilities, set forth by an attached Exhibit A. Schindler represented that it would maintain the specified elevators and equipment in first class operating condition by conducting weekly examinations of the elevators and adjusting, lubricating, cleaning and repairing the equipment as necessary.[1] As is pertinent to this appeal, Schindler also contracted to provide "24 Hour Emergency/After Hour Minor Adjustment Callback Service." Building Services Contract, Exhibit A, ¶ 9. The parties do not appear to dispute that, as part of this emergency service, Schindler is under a duty to respond and work to resolve entrapments.
 {¶ 22} The trial court held that Schindler did not breach its duty to respond to the entrapment. In so finding, the trial court relied on the affidavit of Sean Walsh. Walsh averred that at "all times relevant herein, Schindler performed the tasks enumerated in the contract in a reasonably proper and efficient manner." The court found that appellants offered no evidence to contradict Walsh's statement. Therefore, no genuine issue of material fact existed regarding whether or not Schindler breached its duty, and summary judgment in Schindler's favor was appropriate.
 {¶ 23} Appellants contend that they presented ample evidence demonstrating that Schindler breached its duty. Specifically, appellants submit that Schindler could have and should have instructed the courtesy staff at the Huntington Center to shut off the power to the elevator, thereby preventing Ms. Sant's ultimate descent. Appellants present the testimony of their expert, William Daley, to support their position and argue that his testimony is sufficient to create a genuine issue of material fact as to whether Schindler responded appropriately to the entrapment.
 {¶ 24} Appellants' argument is based upon Daley's observation that the entrapment situation could have been managed differently. During his deposition, Daley opined that it was possible for Schindler's on-call technician to discuss with the Hines courtesy staff the nature of the erratic operation of the elevator and to take appropriate actions prior to arriving at the Huntington Center. The courtesy staff had the ability to completely shut off power to the elevator, thereby preventing its unpredictable movement and the ultimate descent to the ground floor. According to Daley, this option was the only logical action to take. Therefore, Daley submits that because the Schindler technician did not instruct the Hines courtesy staff to shut off the power to the elevator, Schindler was negligent.
 {¶ 25} However, appellants' position — as supported by Daley's testimony — overstates Schindler's duty and is based upon assumptions that cannot be substantiated by the facts in the record. Appellants' contentions emanate from the incorrect presupposition that Schindler is obligated to exercise the highest degree of care. If that was true, one might speculate that one way of responding to and resolving an entrapment would better guarantee the safety of the passenger as compared to another. In such case, even though the safer manner may not be the best method with regard to other factors, such as the knowledge and ability of the courtesy staff, the existence of the safer manner might indicate that implementing a different course of action amounts to actionable negligence. Schindler, however, is only required to act in a reasonably proper and efficient manner. Given this standard of duty, it is not enough to say that there was an alternative method available; to prevent summary judgment, it must be established that the chosen manner was not reasonable or proper. This appellants fail to do.
 {¶ 26} The force of Daley's testimony is further weakened by the fact that he was unaware of the particular configuration of the elevator shafts in the building or even where the elevator was located during the entrapment. Daley testified that the appropriate method to remove a trapped passenger from an elevator was to cut power to the elevator if the elevator was at or near a landing. However, in this instance, the elevator had already begun to descend into a blind hoistway — an area that, by its very nature, precludes the elevator from being at or near a landing.
 {¶ 27} Moreover, all parties agree that it is not safe to shut off power to an elevator when it is moving. Appellants submit that it was possible to determine whether the elevator was moving; therefore, it was possible to turn off all power to the elevator in a safe manner. Yet, the record is replete with testimony that there was no absolute way to determine the elevator's true location in the hoistway, let alone whether the elevator was moving.
 {¶ 28} Ultimately, the elevator malfunctioned because of a faulty encoder key: a piece of machinery that effectively acts as the elevator's brain to tell it where it is and where it should be going. Because the encoder key was corrupted, the elevator was "confused" and could not be relied upon to provide accurate information as to its location. This phenomenon is confirmed by the discrepancies between what the elevator's indicators gave as the position of the elevator compared to where Rogers could visually ascertain it to be. Further, Mrs. Sant testified that the elevator would drop without warning at sporadic intervals. Thus, she would not be able to predict when the elevator would suddenly begin to move, nor could the courtesy staff. Accordingly, with no way to ensure that the elevator was not moving, there was no way for the Schindler technician to safely tell the Hines staff to shut off power to the elevator without his actual presence at the building.
 {¶ 29} Given the above, while it may be Daley's testimony that the better manner in which to handle the elevator entrapment would be to shut the power off, appellants have not established that the way in which Schindler did respond to the entrapment was not reasonably proper and efficient. Accordingly, appellants cannot show that Schindler breached its duty of ordinary care. With no genuine issue of material fact remaining for a jury's consideration, the trial court properly granted summary judgment on appellant's negligent response claim against Schindler.
 {¶ 30} Appellants also assert that Hines was negligent in its response to Mrs. Sant's entrapment. As mentioned above, in order to successfully establish a negligence claim, appellants must prove duty, breach and an injury proximately caused by the breach. Hines moved for summary judgment arguing that its only duty, if any, was to contact Schindler in the case of an entrapment. Hines' courtesy staff did in fact call Schindler, thus Hines submits that appellants cannot prove breach of any duty. The trial court essentially agreed with Hines, finding that there is no evidence to show that Hines had any duty to oversee Schindler's maintenance of the elevator or to otherwise respond to a report of an entrapment.
 {¶ 31} Appellants dispute the trial court's decision. Appellants contend that, rather than owing no duty, Hines is classified as an "owner or operator" under Ohio law. Accordingly, appellants argue that Hines is classified as a common carrier and owes the highest degree of care for the safety of passengers consistent with the operation of the elevator. Conver, at ¶ 33.
 {¶ 32} Appellants cite Cobb-Bradley Realty Co. v. Hare
(1903), 24 Ohio C.C. (n.s.) 135, to support the proposition that a property manager, such as Hines, is regarded as an owner or operator. However, the holding of Cobb-Bradley reveals no such conclusion. Instead, that court held that a building owner owes building tenants the highest degree of care in the operation of a passenger elevator and that duty will be imputed to the building owner's employee who physically operated the elevator.
 {¶ 33} It is undisputed that Huntington Center Associates is the owner of the Huntington Center, including the elevators located within the building. Hines is the property management company that was hired by the Huntington Center Associates to run the property. Appellants cite no case law holding a property manager to the same exacting standard as a property owner or common carrier, nor has this court discovered any such case law through its own search. While a Hines representative did enter the Building Services Contract with Schindler, the contract was clearly executed by Hines on behalf of the Huntington Center Associates as the owner. Accordingly, Hines is not classified as an owner or operator and is not held to the highest standard of care.
 {¶ 34} The question remains as to whether or not Hines owed any duty to appellants with regard to the operation of the elevators. Hines has established that no traditional common law duty, i.e., common carrier, business invitee or licensee, exists between the respective parties. Nor is there a legislatively mandated or contractual duty regarding elevator entrapments. Thus, if any, Hines' duty to appellants is limited to the most basic — the duty to exercise due care to avoid foreseeable injury to others. Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367.
 {¶ 35} The particular facts and circumstances of any given situation, as well as the foreseeability of an injury to a person in the victim's position, determines what constitutes due care in that circumstance. Eisenhuth, supra. Here, Hines' personnel were faced with an elevator entrapment. The evidence in the record demonstrates that the courtesy staff on duty at the time of the entrapment followed the policies set forth for handling entrapments. Specifically, the staff answered Mrs. Sant's call for help through the elevator's intercom system, and one member of the staff checked to see if he could free Mrs. Sant by pushing a call button on the indicated floor. When the staff determined that they were not able or qualified to free Mrs. Sant without unduly placing her in harms way, they contacted Schindler to inform them of the entrapment.
 {¶ 36} Appellants assert that Hines' staff should have done more to resolve Mrs. Sant's entrapment. Yet, Mrs. Sant provides no legal basis for this position. The Hines' courtesy staff acted in a reasonably prudent manner under the given circumstances: they contacted Schindler, the party that had assumed the duty to respond to and work to resolve elevator entrapments. Accordingly, appellants cannot prove Hines breached any duty it may have owed. The trial court properly granted summary judgment in Hines' favor.
 {¶ 37} Based on the foregoing, we overrule appellants' single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and Sadler, JJ., concur.
Summary: A company that enters a contract to maintain an elevator is held to a duty of ordinary care, which is limited in scope to the confines of the responsibilities assumed under the contract. Property management company overseeing a property is not held to the same duty as the building owner and, therefore, is not held to highest standard of care. Appellants failed to prove breach of duty; summary judgment is appropriate.
[1] The contract expressly provides that Schindler is not responsible for car enclosures, ceiling car bulbs, handrails, gates, doors, frames and sills, among other enumerated items.