HENDRIX, ADMX., ET AL., APPELLANTS, *v.*
EIGHTH AND WALNUT CORP., ET AL., APPELLEES.

[Cite as Hendrix *v.* Eighth and Walnut Corp. (1982), 1 Ohio St. 3d 205.]

(No. 81-1681—Decided August 11, 1982.)

*Mr. William Luke Leonard* and *Mr. John R. Mechstroth, Jr.,* for appellants.

*Messrs. Beirne & Wirthlin,* and *Mr. Thomas P. Woods,* for appellee Eighth and Walnut Corporation.

*Messrs. Benjamin, Faulkner, Tepe & Sack, Mr. Robert H. Sack* and *Mr. Thomas Yocum,* for appellees Dover Elevator Company and Dover Corporation.

KRUPANSKY, J. In this cause we are called upon to determine whether the Court of Appeals was correct in affirming the trial court's grant of summary judgment in favor of appellees Eighth and Walnut and Dover.

Pursuant to Civ. R. 56(C), summary judgment may be granted when it appears from the evidence, "that reasonable minds can come to but one conclu-

sion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." We must, therefore, construe the evidence most strongly in favor of plaintiff-appellants. In so doing, we find no error in the grant of summary judgment for appellees.

## I.

With respect to the liability of appellee Eighth and Walnut, appellants urge this court to fashion a rule of law holding the commercial lessor which is out of possession and control liable to third parties for damages caused by a defective elevator on the leased premises, when by the terms of the lease, the lessee was responsible for the maintenance and repair of the elevator.

In Ohio, the commercial lessor's liability is governed by traditional common law principles. Under the common law, one having neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises. See, *e.g., Pitts* v. *Housing Authority* (1953), 160 Ohio St. 129 [51 O.O. 51]; *Brown* v. *Baseball Co.* (1952), 158 Ohio St. 1 [47 O.O. 478]. The lessor who does not retain the right to admit or exclude others from the premises has generally not reserved the degree of possession or control necessary to impose liability for the condition of the premises. *Pitts* v. *Housing Authority, supra; Cooper* v. *Roose* (1949), 151 Ohio St. 316 [39 O.O. 145].

A lease typically transfers occupation and control of the leased premises to the lessee, and the lease in the case *sub judice* was typical in this regard. Under the express terms of the lease between Merrick and Eighth and Walnut, possession and control of the premises were placed in the hands of Merrick. The lease did not provide for any retention by Eighth and Walnut of the right or power to admit or exclude others from the premises. The record in this case clearly indicates that Eighth and Walnut did not occupy any part of the leased premises. Although Eighth and Walnut reserved the right to enter the premises, upon reasonable notice to Merrick, for a few specified purposes, such as to inspect the premises, reservation of such a limited right does not justify a finding that the lessor retained control of the premises. *Cooper* v. *Roose, supra; Kauffman* v. *First-Central Trust Co.* (1949), 151 Ohio St. 298 [39 O.O. 137]; *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611 [1 O.O. 269].

The evidence in the record of this case leads only to one conclusion, viz., Eighth and Walnut had relinquished substantially all occupation and control of the premises to Merrick. This finding alone would ordinarily be sufficient to support a summary judgment in favor of Eighth and Walnut. The finding that the lessor was out of possession and control has been held to relieve the landlord from liability for damages resulting from the condition of the premises even in cases where the landlord agreed to make repairs. *Cooper* v. *Roose, supra; Berkowitz* v. *Winston, supra.* In this case, not only was the lessor out of possession and control, but the lessor had no responsibility for making repairs on the elevator. Rather, the lessee expressly agreed to assume that responsibility, and the duty to maintain the elevator in safe operating

condition was clearly assumed by the lessee under the terms of the lease. As an added measure of protection for the lessor, the lessee agreed to indemnify Eighth and Walnut for damages for injuries to persons due to the use of the premises by the lessee. Thus, the type of situation which gave rise to this lawsuit was contemplated by the parties, and by agreement, responsibility for damages resulting from defects in the premises was placed squarely on the lessee. We, therefore, find no error in the Court of Appeals' affirmance of summary judgment in favor of appellee Eighth and Walnut.

Appellants cite *Shindelbeck* v. *Moon* (1877), 32 Ohio St. 264, for the proposition that a lessor out of possession and control may be held liable for damages caused by defective premises if special circumstances are proven which establish that liability. Such special circumstances were found in *Stackhouse* v. *Close* (1911), 83 Ohio St. 339, when the lessor, pursuant to the terms of the lease, retained and exercised partial control over the leased premises, and the lessor was under a statutory obligation pursuant to the applicable R. S. 4238-1 (86 Ohio Laws 381). The lessor in *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20 [22 O.O.3d 152], was found liable for damages resulting from the defective condition of residential premises. In *Shroades,* the lessor was in violation of a statutory duty to repair imposed on residential lessors under the Landlords and Tenants Act of 1974, viz., R.C. 5321.04.

Appellants argue liability should be imposed on the lessor because the lessor allegedly was aware of the defective condition of the premises at the time possession was delivered to the lessee. Significant in this regard is the stipulation of the parties that two certificates of inspection were issued by the city of Cincinnati elevator inspectors — one in May 1975, just prior to the commencement of the lease, and the second in October 1975, while Merrick was in possession of the premises. Merrick's uncontradicted testimony indicated she complied fully with the repair orders requested by the inspectors prior to the issuance of the second certificate. Thus, it is undisputed the city authorized the operation of the elevator and that Merrick had complied with the city's requirements. The only reasonable inference which follows from these undisputed facts is that the condition of the elevator which caused Hendrix' death arose sometime after the second certificate was issued, which was after Merrick took possession of the leased premises.

In any event we are not persuaded that the allegations regarding the lessor's knowledge of defects, even if established, would amount to special circumstances comparable to those found in *Stackhouse* and *Shroades,* particularly in the context of a commercial lease. In a commercial setting, the lessee is in a position to bargain with the lessor over the division of repair responsibilities, and the terms in a commercial lease are left to the parties to negotiate between themselves. Thus, the relationship between the commercial lessor and lessee is not regulated by any statutory regulations, such as the Landlords and Tenants Act; rather, the common law maxim *caveat emptor* applies, and "the tenant takes them [the premises] as he finds them with all existing defects of which he knows or can ascertain by reasonable inspection."

*Ripple* v. *Mahoning National Bank* (1944), 143 Ohio St. 614, 621 [28 O.O. 508] (concurring opinion.)

It is not disputed that the lessee, Merrick, knew about the defective condition of the elevator and that Eighth and Walnut had no notice from either Merrick or Dover of the needed repair work. We see no reason to impose liability on Eighth and Walnut, the lessor of commercial premises, when the lessee continued to operate the elevator with full awareness of its unsafe condition.

Appellants contend liability for damages arising out of defects in real property should be subject to the same standards as liability arising out of defects in personal property. The application of different standards, appellants argue, violates the Equal Protection Clauses of the United States and Ohio Constitutions because consumers and users of real property are not afforded the same rights as consumers and users of personal property. We find no merit in this argument.

## II.

With respect to appellee Dover, it is clear from the record of this case that there are no grounds for imposing liability on Dover. Dover was hired by Merrick to perform only limited and temporary repairs on the elevator, and there is no suggestion that the work performed by Dover, an independent contractor, was in any way performed in a negligent manner. Appellants might have a cause of action if Dover failed to exercise ordinary care in performing the obligations it assumed under its contract with Merrick, *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31 [1 O.O.2d 181], but the record in this case contains no evidence that Dover negligently performed the specified work which was requested by Merrick.

Although Dover advised Merrick further repair work was necessary to place the elevator in safe operating condition, Merrick chose not to authorize the additional work. The situation was entirely beyond the scope of Dover's control; Dover could not force Merrick to authorize the needed repairs, nor could it prevent the continued use of the elevator. The record indicates Dover's attempt to prevent further operation of the elevator by pulling the main disconnect switch was of no avail. Dover had contracted with Merrick to perform only the specified repair work which was requested, and had no continuing obligations. Accordingly, we find no error in the Court of Appeals' affirmance of summary judgment in favor of appellee Dover.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

SWEENEY, LOCHER and HOLMES, JJ., concur.

CELEBREZZE, C.J., W. BROWN and C. BROWN, JJ., concur in part and dissent in part.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part. I concur in Part II of the majority's opinion which affirms the trial court's grant of summary judgment in favor of Dover Elevator. For the reasons stated below, however, I dissent from Part I of the opinion which deals with the disposition of appellants' cause of action against Eighth and Walnut Corp.

The majority of this court has approved the trial court's grant of summary judgment to the defendant Eighth and Walnut on the grounds that since occupation and control of the rented parking garage were in the hands of the decedent's employer, the landlord Eighth and Walnut was — as a matter of law — relieved from imposition of tort liability. Although the general rule in Ohio is that the transfer of occupation and control *ordinarily* relieves a commercial lessor from liability for damages resulting from the condition of the premises, see, *e.g., Pitts* v. *Housing Authority* (1953), 160 Ohio St. 129 [51 O.O. 51]; *Brown* v. *Baseball Co.* (1952), 158 Ohio St. 1 [47 O.O. 478], this immunity is in no way absolute.[2] See, *e.g., Shindelbeck* v. *Moon* (1877), 32 Ohio St. 264, cited with approval in *Shroades* v. *Rental Homes, Inc.* (1981), 68 Ohio St. 2d 20 [22 O.O.3d 152]. Rather, upon a showing of "special circumstances" landlord liability may be imposed. *Shindelbeck, supra,* at paragraph three of the syllabus.

Such was the case in *Stackhouse* v. *Close* (1911), 83 Ohio St. 339, in which this court held that even if a landlord delivers property which is free of latent defects, if he knowingly permits a tenant to create an unlawful or dangerous condition, both landlord and tenant liability to a third party is justified under a finding of special circumstances. Certainly there is even more cause to impose liability on a landlord who knowingly delivers property containing a latent defect which itself creates the unlawful and dangerous condition when the landlord could reasonably expect the property to be used without warning to others. Indeed, support for this very proposition may be found in other jurisdictions. See *Deutsch* v. *Max* (1935), 318 Pa. 450, 178 A. 481; *Standard Oil Co.* v. *Decell* (1936), 175 Miss. 251, 166 So. 379; *Barham* v. *Baca* (1969), 80 N.M. 502, 458 P. 2d 228; *Smith* v. *General Apartment Co.* (1975), 133 Ga. App. 927, 213 S.E. 2d 74.

In my view, in the present case appellants presented sufficient evidence of special circumstances to warrant submission of the issue of Eighth and Walnut's liability to the jury.[3] The elevator which caused the death of Hendrix was equipped with a faulty door interlock system. Such a condition was in violation of the city safety regulations and ordinances. Affidavits and testimony of city safety inspectors were introduced which made it clear that

---

[2] The provisions of the lease at issue here present an arguable case for the theory that landlord did not even give up control and possession of the elevator in that under the one-year lease, Eighth and Walnut apparently retained the right to permit or prevent repairs to the elevator.

[3] Indeed, any determination of special circumstances would itself be, in most instances, a jury question.

this condition had been in existence — and that Eighth and Walnut had known of these violations — since at least 1974 and probably since 1971. Four of the city's inspection reports note that "orders [were still] pending" and the condition had not been corrected. The inspection report of September 1974 specifically alludes to the fact that "new interlocks were required." This warning was repeated in the inspection report of April 1975, two months before the lease agreement was entered into between Eighth and Walnut and Merrick.

A lessee, under a lease agreement for merely one year, can hardly be expected to be responsible for the major overhaul which would have been necessary to bring the elevator within safety regulations. On the contrary, lessor could reasonably expect and foresee that the lessee would necessarily operate the defective apparatus in the condition in which it was received. The elevator was licensed in the name of Eighth and Walnut Corp. and the lease contained certain restrictions on the repair of the elevator. Eighth and Walnut was aware of the dangerous condition existing at the time of the transfer of possession to Merrick. Indeed, despite the orders pending from the city elevator inspector, lessor had allowed the elevator to continue to operate in a dangerous condition well over a year before this accident occurred.

Defendant Eighth and Walnut has contended throughout the course of this proceeding that no safety violations were present, alleging that the tenant Merrick intentionally altered the door interlocking system. However, in the face of such conflicting testimony as to the good working order of the elevator, the questions of Eighth and Walnut's awareness of the defective condition and whether such knowledge could constitute special circumstances were questions of fact for jury determination. So too was whether the alleged actions by Merrick constituted an intervening cause or whether Eighth and Walnut should be held concurrently liable. Instead, the majority today holds a commercial lessor virtually immune from suit brought by an innocent third party by holding, as a matter of law, that knowledge of an existing defect — no matter how dangerous — can never be considered as "special circumstances" which would warrant imposition of liability.

Appellants' position is based on what has been described as the essence of tort law: "It is the party who does the wrong who should be made responsible for the consequences it entails." *Shindelbeck* v. *Moon, supra,* at 269. Accepting this premise and applying it to the facts of the present case, it is entirely consistent with existing Ohio law not only to allow plaintiffs to proceed to trial, but ultimately to find the landlord, Eighth and Walnut, liable.[4]

---

[4] *E.g. Shindelbeck* v. *Moon, supra; Stackhouse* v. *Close, supra; Brown* v. *Baseball Co., supra,* cited by the majority. See, also, *Casey* v. *Rowill Investment Co.* (Ct. App. Lucas Cty. 1972), 64 O.O. 2d 227, in which, as in the case at hand, the transferor of an interest in real property had repeatedly ignored the orders of governmental safety inspectors to repair conditions which were in violation of safety requirements. In *Casey,* the transferor remained liable to a licensee who was injured as a result of the uncorrected defect.

The evidence in this case, when viewed in the light most favorable to the plaintiffs, shows that the ultimate responsibility for the death of the plaintiffs' decedent flows directly and uninterruptedly from Eighth and Walnut's decision to knowingly introduce the defective elevator into the market place under conditions where it ought to have known it would be used in its defective condition and foreseeable injury would result. I can find no justification to warrant precluding plaintiffs from having their day in court. I suggest that when confronted with the evidence in this case, reasonable minds could very well come to differing conclusions as to the culpability of Eighth and Walnut and the existence of the special circumstances. Accordingly, I would reverse the decision of the Court of Appeals which affirmed the trial court's grant of summary judgment to Eighth and Walnut.

CELEBREZZE, C.J., and W. BROWN, J., concur in the foregoing concurring and dissenting opinion.