CURRIER, Admr., Appellant;

Erie Insurance Exchange, Appellee,

v.

PENN–OHIO LOGISTICS et al., Defendants;

American Steel City Industrial Leasing, Inc. et al., Appellees.

[Cite as *Currier v. Penn–Ohio Logistics*, 187 Ohio App.3d 32, 2010-Ohio-198.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0040.

Decided Jan. 22, 2010.

Behrens, Gioffre & Schroeder Co., L.P.A., James E. Behrens, Joseph Delguyd, and Michael S. Schroeder, for appellant.

Gallagher, Sharp, Fulton & Norman, Mark A. Greer, Gary L. Nicholson, and Timothy J. Fitzgerald, for intervening appellee.

Hanna, Campbell & Powell, L.L.P., Kenneth A. Calderone, and John R. Chlysta, for appellees.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, Juliana Currier, administrator of the estate of Raymond Queen, appeals the judgment of the Trumbull County Court of Common Pleas granting the motions for summary judgment of appellee, American Steel City Industrial Leasing, Inc. ("American"), and of appellee, Erie Insurance Exchange. At issue is whether American was a landlord in possession and control of the premises where Queen was injured and thus potentially liable for his death, and whether Erie was obligated to provide a defense and indemnity to American.

{¶ 2} In November 2005, American purchased a 750,000–square–foot industrial complex on Henricks Road in Austintown, Ohio. The complex was formerly owned

by Youngstown Steel Door Company. In April 2006, American leased buildings 23, 23A, 25, 25A, 27, and 29 of the complex to Queen's employer, Penn–Ohio Logistics. On August 29, 2006, Queen was at work unloading steel bundles from a truck using an overhead crane and stacking them on the floor of the building. He stacked over 800,000 pounds of steel on the floor. Due to the weight of the steel, the floor on which Queen was working collapsed into the basement below. Queen suffered extensive injuries in the fall, which ultimately resulted in his death on August 31, 2006.

{¶ 3} On August 30, 2007, appellant filed a wrongful-death action against Penn–Ohio and American, alleging negligence against both and also alleging employer intentional tort against Penn–Ohio. On October 11, 2007, Erie filed a motion to intervene for purposes of filing a declaratory-judgment action seeking a determination that it had no duty to defend or indemnify either defendant. On November 16, 2007, the trial court granted Erie's motion to intervene. Thereafter, the parties engaged in discovery.

{¶ 4} Subsequently, Penn–Ohio filed a motion for summary judgment against appellant; Erie filed motions for summary judgment against Penn–Ohio and American; and American also filed a motion for summary judgment against appellant. Thereafter, appellant voluntarily dismissed her claims against Penn–Ohio.

{¶ 5} The trial court ruled on the parties' summary-judgment motions in its judgment dated April 14, 2009. With respect to American's motion, the court noted that the lease between American and Penn–Ohio granted to Penn–Ohio exclusive possession of the leased premises. While the evidence demonstrated that American's owner William Marsteller was often on site and had the right under the lease to inspect the leased premises and to make building rules, the court found that this did not affect Penn–Ohio's exclusive right to control the premises. The court further found that because American was a lessor out of possession and control of the leased premises, it owed no duty to Penn–Ohio or its employees regarding the condition of the premises. The trial court entered summary judgment in favor of American on appellant's negligence claim against it.

{¶ 6} With respect to Erie's motions for summary judgment, the court found that the additional insured coverage, which Penn–Ohio obtained for American pursuant to the parties' lease, only covered American for vicarious liability resulting from Penn–Ohio's negligence and not for American's independent acts of negligence. The court found that since the only claim in the complaint against American was based on its alleged independent acts of negligence, rather than vicarious liability, American was not entitled to coverage under the policy as an

additional insured. The court entered summary judgment in favor of Erie on its motions.

{¶ 7} Appellant appeals the trial court's judgment, asserting two assignments of error. For her first assigned error, she contends:

{¶ 8} "The trial court erred in granting Appellee, American Steel City Industrial Leasing's motion for summary judgment."

{¶ 9} Appellant argues that the trial court erred in entering summary judgment in favor of American due to the existence of fact issues on her negligence claim.

{¶ 10} Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358, 604 N.E.2d 138. This court has held that summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Frano v. Red Robin Internatl., Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796, ¶ 12, citing *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068.

{¶ 11} The party seeking summary judgment on the ground that the nonmoving party cannot prove his case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264.

{¶ 12} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. Id. at 293, 662 N.E.2d 264.

{¶ 13} If this initial burden is not met, the motion for summary judgment must be denied. Id. However, if the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against him. *Dresher.*

{¶ 14} Since a trial court's decision whether or not to grant summary judgment involves only questions of law, we conduct a de novo review of the trial court's judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, 861 N.E.2d 573, ¶ 41. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to

the trial court's decision. *Brown v. Scioto Cty. Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 15} In order to establish an actionable claim for negligence, the plaintiff must establish that (1) the defendant owed a duty to him, (2) the defendant breached that duty, (3) the defendant's breach of duty proximately caused his injury, and (4) he suffered damages. *Bond v. Mathias* (Mar. 17, 1995), 11th Dist. No. 94–T–5081, 1995 WL 237077, *2. The existence of a duty is fundamental to establishing negligence. If there is no duty, then no liability arises on account of negligence. *Hake v. Delphine,* 11th Dist. No. 2002–T–0010, 2003-Ohio-1591, 2003 WL 1633684, at ¶ 13.

{¶ 16} While the rule in Ohio has changed over the years regarding the duties of landlords under residential leases, in the context of commercial leases, the rule in Ohio is still caveat emptor. *Parma Podiatry Clinic v. Madison Clinic, Inc.* (Mar. 22, 1996), 11th Dist. No. 95–L–039, 1996 WL 200566, *2; *Hendrix v. Eighth & Walnut Corp.* (1982), 1 Ohio St.3d 205, 207, 1 OBR 230, 438 N.E.2d 1149. In *Hendrix,* the Supreme Court of Ohio held:

{¶ 17} "[T]he commercial lessor's liability is governed by traditional common law principles. Under the common law, one having neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises. See, *e.g., Pitts v. Housing Authority* (1953), 160 Ohio St. 129, [51 O.O. 51,] 113 N.E.2d 869 * * *; *Brown v. [Cleveland] Baseball Co.* (1952), 158 Ohio St. 1, [47 O.O. 478, 106 N.E.2d 632] * * *. The lessor who does not retain the right to admit or exclude others from the premises has generally not reserved the degree of possession or control necessary to impose liability for the condition of the premises. *Pitts v. Housing Authority,* * * *; *Cooper v. Roose* (1949), 151 Ohio St. 316, [39 O.O. 145, 85 N.E.2d 545] * * *." *Hendrix* at 207, 1 OBR 230, 438 N.E.2d 1149.

{¶ 18} The Ohio Supreme Court reaffirmed this principle in *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, in which the court held:

{¶ 19} "It is fundamental that to have a duty to keep premises safe for others one must be in possession and control of the premises. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186[, 26 OBR 160, 497 N.E.2d 1118] * * *. The test to be applied in determining control has been expressed as 'the power and right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.' Id. at 188[, 26 OBR 160, 497 N.E.2d 1118] * * *." *Simpson* at 132, 652 N.E.2d 702.

{¶ 20} "The lessor who does not retain the power and right to admit or exclude others from the premises, and which involves a substantial exercise of that right

and power, has generally not reserved the degree of possession or control necessary to impose tort liability for the condition of the premises." *Davis v. Eastwood Mall, Inc.* (Dec. 14, 1990), 11th Dist. No. 90–T–4384, 1990 WL 208846, *1, citing *Cooper v. Roose* (1949), 151 Ohio St. 316, 319, 39 O.O. 145, 85 N.E.2d 545; *Cleveland Baseball Co.*, 158 Ohio St. 1, 47 O.O. 478, 106 N.E.2d 632, at paragraph three of the syllabus; *Wills* at 188, 26 OBR 160, 497 N.E.2d 1118.

{¶ 21} In *Eastwood Mall, Inc.*, this court further held:

{¶ 22} "In a commercial setting, the lessee is in [a] position to bargain with the lessor and the terms in a commercial lease are left to the parties to negotiate between themselves. Thus, the relationship between the commercial lessor and lessee is not regulated by any statutory regulation such as the Ohio Landlord–Tenant Act. Instead, the commercial tenant takes the premises as he finds them with all existing defects of which he knows or can ascertain by reasonable inspection." *Eastwood Mall, Inc.*, 1990 WL 208846, at *2.

{¶ 23} Under the lease between American and Penn–Ohio, American surrendered exclusive possession of the leased property to Penn–Ohio, as follows: "Landlord [American] covenants and warrants that * * * Landlord will keep and maintain Tenant [Penn–Ohio] in exclusive, * * * undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease."

{¶ 24} Based on our review of the lease, no provision gave American the right to admit or to exclude others from the leased premises. Moreover, there is no record evidence that American retained such a right. Further, there is no evidence of the exercise of such a right by American, let alone a substantial exercise of it.

{¶ 25} Appellant argues that the trial court erred in construing the evidence against her and in applying a "clear and convincing" evidentiary standard. In support, she points to the court's isolated comment in its judgment that it was not "convinced" that the rights retained by American in the lease, i.e., the right to inspect and to make building rules, affected Penn–Ohio's exclusive right of control. While the court's use of the word "convinced" is unfortunate, upon review of the comment in context, we hold that the court merely found that American's retained rights did not affect its grant of exclusive possession and control of the property to Penn–Ohio. There is nothing in the court's judgment from which we can fairly deduce that the court applied the clear-and-convincing standard or construed the evidence against appellant.

{¶ 26} Appellant cites *Fryberger v. Lake Cable Recreation Assn.* (1988), 40 Ohio St.3d 349, 533 N.E.2d 738, for the proposition that the right to admit or exclude persons from the rental property is not the sole measure of control under a commercial lease. However, in *Fryberger*, the court merely held that liability

can arise when the defendant shares the right to admit or exclude with other defendants. Id. at 352. However, here, there is no evidence that American had or shared the right to admit and exclude.

{¶ 27} Next, appellant argues that American retained possession and control over the premises because the lease provides that the tenant will comply with any "rules of the Building" the landlord adopts. However, William Marsteller, American's owner, testified that no such rules were ever adopted, and appellant concedes that there are no such rules in evidence. She argues that such a rule-making authority could possibly include the power to make rules regarding who is admitted or excluded from the building. However, such an argument is merely speculative. In any event, in making this argument, appellant ignores the requirement of a landlord's liability under a commercial lease that in addition to the power to admit and exclude, there must also be the "substantial exercise of that right and power." *Wills*, 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118; *Simpson*, 73 Ohio St.3d 130, 652 N.E.2d 702. Since appellant does not refer to any rules of the building regarding admission or exclusion, or any other building rules for that matter, she can hardly demonstrate a "substantial exercise" of the right to admit and exclude.

{¶ 28} Appellant next argues that because American retained in the lease the right to consent to additions and improvements to the building, this provision demonstrates that it retained control over the leased premises. Appellant cites *Stackhouse v. Close* (1911), 83 Ohio St. 339, 94 N.E. 746, in support. In *Stackhouse,* the court held, "[H]aving reserved to [the landlord] and his [architect] the direction and supervision of the changes referred to [in the lease] and having exercised that right, [the landlord] was bound to see that safe means of egress were provided for the new use which was to result from the change." Id. at 355. Thus, even in that early case, the Supreme Court held that the retention of control on the part of the landlord that would give rise to liability to third parties required actual, physical control, not just a legal right to control.

{¶ 29} The Supreme Court later explained its ruling in *Stackhouse* in *Pitts v. Cincinnati Metro. Hous. Auth.* (1953), 160 Ohio St. 129, 51 O.O. 51, 113 N.E.2d 869. First, the court in *Pitts* reaffirmed its longstanding rule that in order to have possession and control of the leased premises, one must have the power to admit and exclude individuals from the premises. Id. at 141. In finding no liability on the part of the landlord in *Pitts,* the court distinguished *Pitts* from *Stackhouse* as follows:

{¶ 30} "Appellants rely upon *Stackhouse* * * *. In that case, the landlord participated in and directed and supervised the alteration of the part of the premises claimed to be defective. * * * Unlike in *Stackhouse* * * *, the defendant in the instant case did not do anything with respect to the part of the

premises which was responsible for the injuries for which recovery is sought." *Pitts,* 160 Ohio St. at 142–143, 51 O.O. 51, 113 N.E.2d 869.

{¶ 31} The Supreme Court in *Pitts* thus reaffirmed that in order for a commercial landlord to be held to have retained possession and control of the leased premises based on his retention of the right to give consent to additions or alterations, it must be demonstrated that the landlord actually exercised physical control; it is not sufficient that he merely retained the legal or technical right to give consent to alterations or additions.

{¶ 32} Thus, pursuant to *Stackhouse* and *Pitts,* since no alterations were performed in the instant case and there was thus no involvement in any such alterations by American, its right to consent to alterations does not mean it was in possession and control.

{¶ 33} Appellant next argues that the following created a fact issue regarding American's possession and control of the leased premises: (1) Marsteller came into the building "a couple times a week," (2) he occasionally used Penn–Ohio's crane after hours, (3) he had Queen, who was a personal friend of his, occasionally do odd jobs for him when he was finished with his day's work at Penn–Ohio, and (4) Marsteller told Penn–Ohio's insurance agent that American was to be an additional insured on Penn–Ohio's insurance policy. However, none of this is relevant to whether American had possession and control of the leased premises.

{¶ 34} We note that American's industrial complex covers 750,000 square feet and that American leases other sections of the complex to other tenants and retains certain parts of the complex for its own uses. It is undisputed that Marsteller routinely walks through the complex to get to areas retained by American or to meet with other tenants. As the Supreme Court held in *Hendrix,* 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149: "Although [the lessor] reserved the right to enter the premises * * * for a few specified purposes, such as to inspect the premises, reservation of such a limited right does not justify a finding that the lessor retained control of the premises. *Cooper v. Roose*[, 151 Ohio St. 316, 39 O.O. 145, 85 N.E.2d 545]; *Kauffman v. First–Central Trust Co.* (1949), 151 Ohio St. 298[, 39 O.O. 137, 85 N.E.2d 796]; *Berkowitz v. Winston* (1934), 128 Ohio St. 611[, 1 O.O. 269, 193 N.E. 343]." Id. at 207, 1 OBR 230, 438 N.E.2d 1149.

{¶ 35} We note that in most leases, whether residential or commercial, the landlord retains a right to inspect. As the court held in *Hendrix,* this does not equate with the power to admit or exclude, the sine qua non of retained possession and control of commercial property. Id.

{¶ 36} Next, appellant argues that American violated the Ohio Building Code by permitting Penn–Ohio to place loads on its floor that were greater than

that which was permitted by the code. It also argues that after the accident, American was cited by the Occupational Safety and Health Administration ("OSHA") for not posting the floor's weight capacity.

{¶ 37} Apparently aware that violations of such regulations cannot serve as the basis for a negligence claim, see *Sabitov v. Graines*, 177 Ohio App.3d 451, 2008-Ohio-3795, 894 N.E.2d 1310, ¶ 27, appellant argues that because the parties to the lease each agreed to comply "with all laws, orders, ordinances, and other public requirements * * * affecting the Leased Premises," American's alleged violation of the Ohio Building Code and OSHA regulations rendered it negligent, irrespective of whether it retained possession and control of the leased premises.

{¶ 38} While we recognize that a lessor may undertake a specific duty by contract that he is not otherwise obligated to perform, the general obligation in the subject lease does not refer to any specific duty or law. Rather, it requires each party to comply with "all laws" affecting the leased premises.

{¶ 39} We note that the cases appellant cites in support merely held that a landlord who undertakes a specific obligation under a lease may be liable for its breach. None of these cases held that a promise to comply with all laws affecting the leased premises results in negligence.

{¶ 40} By virtue of the broad and general nature of the lease provision, it does not bind the parties to any specific obligation. It merely confirms what the law requires of all persons: compliance with the law. If we were to adopt appellant's argument, virtually any violation of any law remotely affecting the property committed by either the tenant or the landlord would result in that party's liability in negligence. There is no indication that the parties intended such a result, and we will not impose it on them.

{¶ 41} We also observe that in *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 649 N.E.2d 1215, the Ohio Supreme Court held that "a violation of OSHA does not constitute negligence per se." Id. at 304. Further, " 'The Ohio Basic Building Code is an administrative regulation, not a legislative enactment, and, as such, any violation would not constitute negligence per se.' " (Emphasis omitted.) *Zimmerman v. St. Peter's Catholic Church* (1993), 87 Ohio App.3d 752, 754, 622 N.E.2d 1184, quoting the trial court's summary-judgment entry.

{¶ 42} Finally, in *Hendrix*, 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149, the Ohio Supreme Court held: "The finding that the lessor was out of possession and control has been held to relieve the landlord from liability for damages resulting from the condition of the premises *even in cases where the landlord agreed to make repairs*." (Emphasis added.) Id. at 207.

{¶ 43} Thus, even if American had agreed to comply with these specific regulations, as a landlord out of possession and control, it would not be liable for damages resulting from the condition of the leased premises.

{¶ 44} Next, appellant argues that even if American was not liable as a landlord in possession or control or in violation of an agreement in the lease, American would still be liable because it concealed or failed to disclose a known, nonobvious defect. Appellant cites *Shump v. First Continental–Robinwood Assoc.* (1994), 71 Ohio St.3d 414, 644 N.E.2d 291, in support. However, *Shump* involved a residential lease and is therefore not applicable.

{¶ 45} In *Stackhouse*, 83 Ohio St. 339, 94 N.E. 746, the Ohio Supreme Court held: "A lessor of a building out of possession and control is not liable to the tenant or other person rightfully on the premises for their condition, in the absence of deceit * * *." Id. at paragraph one of the syllabus. In *Shinkle v. Birney* (1903), 68 Ohio St. 328, 67 N.E. 715, the Supreme Court explained a commercial lessor's liability based on deceit as follows: "[I]f the lessor has knowledge of defects in the premises which are not discoverable by the tenant upon practicable examination, * * * liability arises from the fraudulent concealment of such defects * * *." Id. at 334. The court held that such a claim required proof of actual fraud. Id.

{¶ 46} Here, appellant argues that the basement under the floor where Queen was working was a defect. However, there is nothing about a basement that would suggest that by its nature, a basement is a defect. Of course, basements are found in many residences and commercial buildings. They can be full or partial. Sometimes they have high ceilings and are easily observable from the outside; sometimes the ceilings are lower and less observable. In any event, there is no evidence that the basement here could not have been easily discovered by Penn–Ohio in a reasonable inspection.

{¶ 47} Our review of the record reveals that the only alleged evidence of fraudulent concealment is that American was aware that Penn–Ohio was storing steel and did not advise it of the existence of the basement. Contrary to appellant's argument, there is no record evidence that Marsteller knew that Penn–Ohio was storing "dangerous" amounts of steel on the floor. Appellant cites the deposition testimony of Jennarong Montgomery, an employee of another lessee in the building, in support. However, this witness merely testified that Marsteller came to the site "maybe a couple times a week," and most likely would have seen Penn–Ohio "stacking steel there." Neither he nor anyone else testified that Marsteller knew that Queen or any other Penn–Ohio employee had stacked dangerous amounts of steel prior to the accident. Further, there is no evidence that Marsteller was in the building at any time within three weeks prior to the accident.

{¶ 48} In any event, there is no evidence that American concealed the basement. There is no evidence that Penn–Ohio ever asked American whether the floor on which it was storing steel had a basement beneath it. There is no evidence that Penn–Ohio ever attempted to inspect the floor or the area beneath it. Further, there is no evidence that Penn–Ohio was prevented from inspecting or unable to inspect this area during the five months it was in possession and control of the leased premises prior to Queen's injury.

{¶ 49} Contrary to appellant's argument, Penn–Ohio's owner Felix ("Bud") Hallsky did not testify that one "cannot determine" whether there is a basement under the floor. He merely testified that when looking at the building from the outside, it was not apparent that there were two levels. Further, contrary to appellant's argument, neither Hallsky nor Penn–Ohio's employee Richard Perline testified that Penn–Ohio would not have rented the space if either of them knew there was a basement under the floor.

{¶ 50} In *Hendrix*, 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149, the Ohio Supreme Court held that even though evidence was presented that the lessor under a commercial lease was aware of the existence of defects at the property, the lessor was not liable for injuries resulting therefrom. The court held: "[W]e are not persuaded that the allegations regarding the lessor's knowledge of defects, even if established, would [result in liability] in the context of a commercial lease." Id. at 208.

{¶ 51} Here, there is no evidence that the basement was defective. Because the leased premises were the subject of a commercial lease and were available for inspection, American had no duty to disclose it. Without such a duty, there was no fraudulent concealment.

{¶ 52} We therefore hold that the trial court did not err in finding that American was not in possession and control of the leased premises at the time of Queen's injury, that it owed no duty to Penn–Ohio or its employees regarding the condition of the premises, and that it was not liable for Queen's death.

{¶ 53} Appellant's first assignment of error is not well taken.

{¶ 54} For her second assigned error, appellant alleges:

{¶ 55} "The trial court erred in granting appellee, Erie Insurance Exchange's motion for summary judgment."

{¶ 56} "An insurance policy is a contract and a court's construction of a contract is a matter of law." *Hiller v. OHIC Ins. Co.*, 11th Dist. No. 2005–T–0112, 2006-Ohio-4536, 2006 WL 2528701, at ¶ 13. When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Servs. Inc. v. Nationwide Ins. Cos.*

(1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, at paragraph one of the syllabus. We look at the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph two of the syllabus. When the language of a written contract is clear, a court determines the intent of the parties from the writing itself and does not construe or interpret the contract. Id. at 246. A contract is unambiguous if it can be given a definite legal meaning. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶ 57} It is well settled that a court may construe an insurance contract only when it is ambiguous, i.e., when its terms are reasonably susceptible of more than one interpretation. *Alexander,* 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. A court has the duty to enforce an insurance contract as made by the parties, and not to rewrite contract terms that are unambiguous under the guise of judicial construction. *Bending v. Metro. Life Ins. Co.* (1944), 74 Ohio App. 182, 187, 29 O.O. 319, 58 N.E.2d 71.

{¶ 58} An insurer's duty to defend first depends upon the "scope of the allegations of the complaint * * *, and where the complaint brings the action within the coverage of the policy the insurer is required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured." *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, at paragraph two of the syllabus.

{¶ 59} Here, the lease required Penn–Ohio to maintain a comprehensive general liability insurance policy and to include American as an additional insured on its policy. Pursuant to the lease, Penn–Ohio purchased an insurance policy from Erie, which listed American as an additional insured. The policy was in effect on August 29, 2006, the date of appellant's loss. The policy included an additional insured endorsement, which provided: "WHO IS AN INSURED * * * is amended to include [American] as an insured *but only with respect to liability arising out of [Penn–Ohio's] operations or premises * * * rented to [Penn–Ohio]."* (Emphasis added.) The policy also lists the warehouse rented to Penn–Ohio as the insured premises.

{¶ 60} The policy itself does not define the phrase "liability arising out of [Penn–Ohio's] operations or premises * * * rented to [Penn–Ohio]." Erie argues that the additional-insured endorsement only insured American for vicarious liability since the endorsement provides that coverage only applies to liability

"arising out of" the operations of the named insured (Penn–Ohio) or premises rented to it. Erie further argues that because the complaint alleged that American was liable only for its independent acts of negligence, rather than vicarious liability, American was not entitled to coverage as an additional insured.

{¶ 61} In contrast, appellant argues that the endorsement provides coverage in two separate situations. She argues that the phrase "arising out of [Penn–Ohio's] operations" refers to vicarious liability. She argues that the phrase "arising out of premises rented to [Penn–Ohio]" provides coverage for American's independent acts of negligence occurring on the leased premises.

{¶ 62} It is manifest that vicarious or secondary liability attaches only to the extent the primary actor is liable. *Sprouse v. Kall,* 8th Dist. No. 82388, 2004-Ohio-353, 2004 WL 170451, at ¶ 11. Since Penn–Ohio, as Queen's employer, could be liable to him only for employer intentional tort, *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572, American could only be vicariously liable for Penn–Ohio's employer intentional tort and not for negligence. Apparently recognizing this legal impediment to coverage for vicarious liability, appellant does not seek coverage for American's vicarious liability. Instead, she argues that American was entitled to coverage under the premises portion of the endorsement for its independent acts of negligence because they allegedly occurred on the leased premises.

{¶ 63} Named insureds often include additional insureds by endorsement to the named insured's policy. This is generally done in order to comply with a contract between the named insured and the entity to be added as an additional insured. For example, as in this case, commercial landlords are frequently added to their tenants' insurance policies as additional insureds. Ohio Insurance Coverage (2008 Ed.), 184. "Often the purpose of the additional insured endorsements is to protect the additional insured against claims of vicarious liability, i.e., liability based entirely upon the relationship between the parties, as opposed to any active negligence on the part of the additional insured." Id. This makes sense for both the named insured and the additional insured. A negligence-free commercial landlord, for instance, invariably is concerned about being held liable for the negligence of its tenant. That landlord should be able to demand coverage through the tenant's insurer because that insurer can offer the coverage either at no additional cost or by a modest increase in premium since covering the landlord's vicarious liability does not increase the insurer's liability exposure. The amount of the loss remains the same regardless of the number of parties contributing to it. Id.

{¶ 64} "[A]n 'additional insured' provision is intended to protect the additional party from liability for the acts or omissions of the primary insured—that is, [the additional insured] is protected in situations where it is secondarily liable for [the

named insured's] conduct. Secondary liability arises when one party is held responsible based solely on its relationship with the responsible actor." (Footnotes omitted.) *Sprouse*, 2004-Ohio-353, 2004 WL 170451, at ¶ 16.

{¶ 65} This court considered virtually the identical language in the instant lease in *Davis v. LTV Steel Co., Inc.* (1998), 128 Ohio App.3d 733, 716 N.E.2d 766. In that case, LTV hired a contractor, Shafer, to perform industrial cleaning at LTV's plant in Warren. The contractor was obligated by the parties' contract to include LTV as an additional insured under the contractor's insurance policy. The additional-insured endorsement covered the additional insured, "but only with respect to liability arising out of [Shafer's] operations or premises * * * rented to [Shafer]." This court held:

{¶ 66} "The plain language of the endorsement extended coverage to LTV only with respect to liability arising out of Shafer's operations or premises * * * rented to Shafer. The phrase 'arising out of your operations' in the endorsement was intended to protect LTV from any liability for the negligence of Shafer's employees who would be performing the industrial cleaning at the LTV plant. See, e.g., *Buckeye Union Ins. Co. v. Zavarella Bros. Const. Co.* (1997), 121 Ohio App.3d 147, 151–152[, 699 N.E.2d 127] * * *. In other words, the purpose of the additional insured endorsement was to protect the additional–insured (*i.e.*, LTV) from being vicariously liable for the tortious acts of the named insured (*i.e.*, Shafer)." *Davis* at 737, 716 N.E.2d 766.

{¶ 67} The Eighth District adopted our holding in *Davis* in *Sprouse*, 2004-Ohio-353, 2004 WL 170451. In that case, the additional-insured endorsement identified the property owner as an additional insured, "but only with respect to [its] liability because of acts or omissions of [the named insured]." Id. at ¶ 3. In citing *Davis*, the court in *Sprouse* held: "The 'additional insured' provision in the policy at issue is intended to protect [the owner] from vicarious liability for the acts or omissions * * * of [the primary insured]. The provision limited Motorists' duty to defend [the owner] to allegations that would make [it] liable based upon [the named insured's] conduct, and *the duty to defend did not extend to any claim based on [the owner's] independent acts or omissions.*" (Emphasis added.) Id. at ¶ 9.

{¶ 68} Appellant argues that *Davis* does not apply here because in that case, the injury did not occur on premises leased to the named insured. Appellant argues that in addition to vicarious liability that arises from the named insured's operations, the additional-insured endorsement in this case also provides coverage for American's independent acts of negligence committed on Penn–Ohio's leased premises. We note that appellant does not cite any Ohio case law authority in support of this contention. Instead, appellant bases its argument on the presence of the word "or" in the endorsement, which provides coverage to

American for liability arising out of Penn–Ohio's operations *or* its leased premises. The use of this disjunctive here does not, however, suggest that two completely different types of insurance are provided. Moreover, the reasons that follow provide strong support for the trial court's finding that the policy provided coverage for American solely for its vicarious liability.

{¶ 69} First, the term "arising out of" relates to both Penn–Ohio's operations and the premises leased to Penn–Ohio. Thus, coverage is to be provided to American, but it is limited in both instances to situations where its liability "arises out of" American's relationship with Penn–Ohio. This is the essence of vicarious liability.

{¶ 70} Second, in order for the coverage urged by appellant to be provided, the endorsement would have to indicate that American was to be an insured "with respect to its independent acts of negligence" that "occur on Penn–Ohio's leased premises." However, neither of these terms appears in the endorsement. For us to arrive at the construction appellant seeks, we would have to include these additional terms in the endorsement. Since the parties did not agree to those terms and the endorsement has a definite meaning without them, we are unwilling and legally unable to rewrite the contract to include them.

{¶ 71} Third, while the total premium for Penn–Ohio's insurance policy was $14,062, Erie charged Penn–Ohio the nominal amount of $30 to include American as an additional insured, not $4,965, as appellant argues. This demonstrates that the parties did not intend to insure American for its independent acts of negligence.

{¶ 72} Fourth, as noted above, appellant's claim against American was based on its independent acts of negligence, not the premises leased to Penn–Ohio, and therefore appellant's claim against American is not within the scope of the additional-insured endorsement.

{¶ 73} Further, the provision in the lease requiring Penn–Ohio to obtain insurance "with respect to the respective activities of each in the building" does not support appellant's position. American's activities were simply those of a lessor out of possession and control. This provision does not evidence, as appellant argues, that American was to be insured for its independent acts of negligence.

{¶ 74} Next, appellant argues that the trial court erred in ignoring the deposition testimony of Thomas Litman in construing the endorsement. Litman is an insurance agent, who sold the subject insurance policy to Penn–Ohio. However, it is well established that "a court is without authority to construe the terms of a contract when their meaning is unambiguous." *Sherock v. Ohio Mun. League Joint Self–Ins. Pool,* 11th Dist. No. 2003–T–0022, 2004-Ohio-1515, 2004

WL 605105, ¶ 16, citing *Alexander*, 53 Ohio St.2d at 246, 7 O.O.3d 403, 374 N.E.2d 146. When the terms of an insurance policy are clear and unambiguous, parol evidence is inadmissible to interpret its terms. *Sherock* at ¶ 16–18. Since we hold that the terms of the insurance contract are clear and unambiguous, the trial court did not err in not allowing Litman's testimony to vary the terms of the policy.

{¶ 75} In any event, even if Litman's testimony was relevant, it would have supported the trial court's finding that the policy did not cover American for its independent acts of negligence. Contrary to appellant's argument, Litman testified that he is not Erie's insurance agent. Further, contrary to appellant's argument, Litman did not testify that the additional cost to include American as an additional insured was $4,965. He testified that American was added as an additional insured for a nominal amount of $30; the $4,965 component of the premium was based on the inclusion of the leased premises as an insured location. He further testified that the additional-insured endorsement did not provide the same type of insurance provided to the named insured. He said that if it did, "Erie Insurance or any other insurer would charge more than $30 * * * for that coverage." He said that the policy provides coverage for American, but it is not the same coverage as that provided to the named insured. Further, he testified that under the instant insurance policy, there would be no coverage if the additional insured was negligent. Finally, Litman testified that if he had been asked to obtain coverage for American's independent acts of negligence, he "would have to have written a separate policy for that." Thus, contrary to appellant's argument, this witness did not testify that the additional-insured endorsement provided coverage for any independent acts of negligence on the part of American.

{¶ 76} Because the endorsement clearly and unambiguously provided additional-insured coverage to American only for its vicarious liability arising out of Penn–Ohio's operations or the premises rented to Penn–Ohio, and appellant's only claim against American was based on its alleged independent acts of negligence, we hold that the trial court did not err in finding that Erie's policy did not provide coverage to American.

{¶ 77} Appellant's second assignment of error is not well taken.

{¶ 78} For the reasons stated in the opinion of this court, the assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

TRAPP, P.J., and CANNON, J., concur.