[Cite as *Matteucci v. Cleveland State Univ.*, 2010-Ohio-2653.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

VINCENT MATTEUCCI

  Plaintiff

  v.

CLEVELAND STATE UNIVERSITY

  Defendant

  Case No. 2008-08906

Judge Alan C. Travis

DECISION

{¶ 1} On April 15, 2010, defendant filed a motion for summary judgment pursuant to Civ.R. 56(C). On May 7, 2010, plaintiff filed a response. The case is now before the court for a non-oral hearing. L.C.C.R. 4.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." See also

*Gilbert v. Summit County*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

{¶ 4} As an initial matter, on May 7, 2010, plaintiff filed a combined motion for sanctions and motion to strike defendant's motion. Plaintiff asserts that defendant has filed its second motion for summary judgment and supporting affidavits "in bad faith or solely for the purpose of delay." Specifically, plaintiff argues that defendant has raised the same arguments that were rejected in the court's November 13, 2009 decision. The trial in this case was continued, however, as a result of plaintiff's December 9, 2009 motion. When the original trial order was amended the dispositive motion deadline was extended accordingly. Defendant timely filed its second motion for summary judgment. Accordingly, plaintiff's motion is DENIED.

{¶ 5} On July 1, 2005, plaintiff was injured while he was working in an elevator that is located in Fenn Tower on defendant's campus. It is undisputed that the building had been leased by defendant to a developer and that defendant was not in possession or control of the building at the time of the accident. Defendant asserts that it owed no duty to plaintiff inasmuch as it had no control over the property upon which the injury occurred.

{¶ 6} Generally, liability in tort is dependant upon occupation or control of the premises. *Mitchell v. Cleveland Electric Illuminating Co.*(1987), 30 Ohio St.3d 92, 94. "'The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.'" Id., quoting *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188. Furthermore, "[a]s to elevators, if a lessee has the sole control and management of an elevator in a leased building, he and not the lessor must usually answer to one who is injured because of defects in the elevator or by reason of surrounding dangers." *Kauffman v. First-Central Trust Co.* (1949), 151 Ohio St. 298, 303. However, an owner of leased property may be responsible for the existence of a defective elevator only when the conditions complained of existed at the time of the lease. Id.

{¶ 7} Defendant's motion is accompanied by an affidavit of George E. Hamm, Jr., Associate General Counsel for defendant, wherein he states as follows:

{¶ 8} "2.  The elevator, which is the subject of Plaintiff's complaint, is located in a building that was leased to Euclid Avenue Housing Corporation (Euclid Avenue), a developer of student housing facilities.  Upon knowledge and belief, Euclid Avenue in turn subleased the building to American Campus Communities, Inc. (ACC).  ACC hired contractors to renovate the building.  Prior to July 1, 2005, possession and control of this building had been transferred from CSU to Euclid Avenue, and from Euclid Avenue to ACC.  As part of this lease arrangement, Euclid Avenue was to indemnify CSU, and upon knowledge and belief ACC was to indemnify CSU and Euclid Avenue as to any injuries or damages occurring at the property.  A true and accurate copy of the relevant portion of the lease agreement between CSU and Euclid Avenue is attached hereto as Exhibit 1.

{¶ 9} "3.  Prior to leasing the building known as Fenn Tower to ACC, it had been closed and was not in use.  CSU had quarantined the building to prevent access to it.

{¶ 10} "4.  Because the building (not just the elevator) was quarantined for a period of time, CSU canceled its contract with an elevator servicing company.

{¶ 11} "5.  Prior to ACC's taking possession of the building, CSU provided notice that none of the elevators had been used for some time and that an inspection of the elevators needed to be done prior to the elevators being used.  Although CSU was unaware of any problems with the elevators, inspection was required since they had been inactive for a period of time.

{¶ 12} "6.  CSU did not have possession or control of Fenn Tower at the time of Plaintiff's injury, and ACC and its contractor had sole responsibility for the maintenance and control of the building and its elevators."  (Defendant's Exhibit A.)

{¶ 13} The undisputed evidence shows that defendant had transferred control of the leased premises to Euclid Avenue and that the property was subsequently subleased to ACC.  Turner Construction Company (Turner), the contractor ACC had hired to complete the renovations, was in possession and control of the property when the injury occurred.  Defendant presented the affidavit of W. Randy Painter, a project

executive for Turner, wherein he states as follows:

**{¶ 14}** "3.  Turner entered into two separate contracts with American Campus Communities to complete the Fenn Tower Renovation Project.

**{¶ 15}** "4.  The first contract was executed in November of 2004, with work beginning immediately thereafter.  The second contract was executed in March of 2005 with work beginning immediately thereafter.

**{¶ 16}** "5.  Under the terms of the first contract, Turner was required to have the elevator inspected prior to use and make any necessary repairs.  Accordingly, Turner contracted with Schindler's Elevator Corporation to have the elevator inspected for any safety hazards.

**{¶ 17}** "6.  On December 15, 2004, Schindler inspected the elevator at issue in this case and found that it met all necessary safety requirements."  (Defendant's Exhibit B.)

**{¶ 18}** Painter further stated in his affidavit that Turner's second contract with ACC provided for the full renovation of the building, including new elevators; however, the elevator where the incident occurred had remained in service during the project. According to Painter, Turner contracted with an elevator service company to maintain the elevator during construction.  Painter averred that on July 1, 2005, Turner was directing the work and believed that the elevator at issue "was in sound working condition."

**{¶ 19}** Plaintiff asserts that Hamm's statement that defendant "quarantined" the building should be construed as an admission that the elevator was in disrepair prior to the lease.  However, Hamm specifically stated that defendant was unaware of any problem with the elevator prior to executing the lease and no evidence has been presented to rebut Hamm's testimony.  Furthermore, the evidence shows that the elevator was inspected on December 15, 2004, after Turner took possession of the building, and the inspection confirmed that the elevator passed "all testing requirements prior to being returned to service."  (Defendant's Exhibit B.)

**{¶ 20}** The evidence submitted by defendant shows that defendant had relinquished possession and control of the building to Euclid Avenue.  The only reasonable inference which follows from these undisputed facts is that once the lease

was executed, defendant had no responsibility for inspecting or making repairs on the elevator. Such a finding is ordinarily sufficient to support a summary judgment in favor of the building owner. *Hendrix v. Eighth and Walnut Corp.* (1982), 1 Ohio St.3d 205, 207. Furthermore, Euclid Avenue agreed both to indemnify defendant for damages resulting from injuries due to the use of the premises by the lessee, and to require all "others providing services or equipment to or for the premises" to indemnify defendant. (Defendant's Exhibit B.)

{¶ 21} Upon review of the evidence, oral argument of counsel, and the memoranda filed by the parties, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

VINCENT MATTEUCCI

    Plaintiff

    v.

CLEVELAND STATE UNIVERSITY

    Defendant
    Case No. 2008-08906

Judge Alan C. Travis

<u>JUDGMENT ENTRY</u>

A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

cc:

Kristin S. Boggs
Velda K. Hofacker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Michael J. Feldman
4230 State Route 306, Suite 240
Willoughby, Ohio 44094

AMR/cmd
Filed May 26, 2010
To S.C. reporter June 9, 2010