## IN THE ABSENCE OF WARRANTY OR DECEIT LESSOR NOT LIABLE FOR CONDITION OF PREMISES.

THE SHINKLE, WILSON & KREIS CO. v. BIRNEY AND SEYMOUR.

Decided, May 19, 1903—68 Ohio State, p. 328.

*Relation of Lessor and Lessee—Arises from Contract—Condition of Premises—Lessee Can Not Maintain Action Against Lessor, When.*

The relation of lessor and lessee arises out of contract, and where there is neither express warranty or deceit the latter can not maintain an action against the former on account of the condition of the premises hired.

Error to the Circuit Court of Hamilton County.

The plaintiff, The Shinkle, Wilson & Kreis Co., brought suit against the defendants in the court of common pleas to recover

the value of a quantity of sugar which it had stored in a warehouse leased from the defendants, and which was destroyed by the alleged defective condition of the warehouse. The allegation of the petition, upon which the liability of the defendants is said to arise, is as follows:

"Plaintiff states that said premises were not at the time of the making of said contract, and for a long time prior thereto had not been in safe or suitable condition for the purposes aforesaid, or for any other purpose, but that the defendants had negligently and wrongfully allowed the same to fall into decay and disrepair; by reason of which said premises, at the time of and before the making of said contract, were in an unsuitable, insecure and dangerous condition. All of which facts were well known to said defendants and unknown to this plaintiff."

On issues of fact joined the cause was submitted to the court without the intervention of a jury, and the facts were found, in substance, as follows: In January, 1897, plaintiff leased from the defendants the five-story brick and stone building constructed for and used as a warehouse in the city of Cincinnati; the building had been constructed something more than thirty years before, its construction being proper according to the understanding of architects at the time of its erection; the building was situated in the lower portion of Cincinnati, which was subject to overflow from the Ohio river, and these conditions, with lapse of time, had produced a dry rot in the timbers of the building, which defect did not appear to any one making a visual examination. Shortly after the leasing of the warehouse the plaintiff stored in it a large quantity of sugar, which would not have been an excessive weight for the floors to carry if the girders had been in their normal condition, but, owing to the invisible decay, their resisting power was only a little more than fifty per cent. of normal. Owing to this condition of decay and a method of construction which has been superseded, the building collapsed, and the plaintiff sustained a loss of something more than $16,000. At the time of the leasing the premises were visually inspected by a representative of the lessee. The decayed condition of the girders, though not apparent to the eye, might have been ascertained by active investigation by tapping and boring. Such active investigation was not made by either party, and neither the lessors nor the lessee knew of the defective construction or of the decay. Upon this state of facts

the court rendered judgment for the defendants, the lessors. On petition in error the judgment of the court of common pleas was affirmed by the circuit court. This is a petition in error for the reversal of both judgments.

*Robert Ramsey,* for plaintiff in error.

*Conner & Walker* and *Harrison & Aston,* for defendants in error.

SHAUCK, J.; BURKET, C. J., SPEAR, DAVIS, PRICE and CREW, JJ., concur.

At the opening of his brief counsel for plaintiff in error defines his position in the case with his usual clearness and frankness, as follows:

"I concede the rule of *caveat emptor* as to contracts of lease or hire generally. Formerly the only exception to this rule was in cases of fraudulent misrepresentation or concealment on the part of the lessor; but in recent years another and most important exception has been added."

The soundness of the former member of this proposition appears from a long line of consistent adjudications by courts administering the common law. In lieu of the second member it should be stated that in a recent decision the addition of another, and an important exception to the rule, has been proposed. A rapidly developing civilization has made all concerned in the administration of justice familiar with the frequently recurring necessity for extending established principles of the law to new conditions and cases. But since the case before us presents no incident of the relation of landlord and tenant which did not appear in the earliest cases, the precise question is whether the generations of judges who established the admitted rule were mistaken in denying the important exception now proposed. The observation of Erle, J., in *Gott* v. *Gandy,* 2 E. & B., 845, is pertinent here:

"The absence of authority to show a duty as between landlord and tenant is very strong against the existence of such a duty. For the relation of landlord and tenant is a very ancient legal relation, and has always been a very common one; and, as there must have been a strong interest in numerous cases to enforce such a duty if it existed, the absence of authority is almost decisive. And on principle I think that, not only is no principle shown from which this duty might be inferred, but that the plaintiffs ask us to violate a very important legal principle. For it is most important

that parties making a contract should be permitted to regulate the terms for themselves, and that courts of law should decide upon the terms which it appears to have been the intention of the contracting parties to agree upon. The present action is in form an action for a wrong; but it is in substance for the breach of a duty arising from a contract between landlord and tenant. The plaintiffs ask us to interpolate into that contract a term without showing anything from which it might appear that it was intended by the parties that there should be such a term."

That case, in strict accordance with very numerous cases preceding and following it, shows that the foundation of a landlord's liability in cases of this character arises out of contract. Certainly, as in all cases arising out of contract, there has been uniformly recognized a liability for fraud in the making of the contract.

For reasons too obvious to require a statement, it has always been held that if the lessor has knowledge of defects in the premises which are not discoverable by the tenant upon practicable examination, and which will imperil his person or property, a liability arises from the fraudulent concealment of such defects; and, in the application of this rule, the terms, fraud, fraudulent concealment, constructive fraud and deceit are synonymous. In accordance with this view the general and admitted rule upon the subject is as stated in *Jaffe* v. *Harteau*, 56 N. Y., 398, as follows:

"A lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to the lessee or others lawfully upon the premises for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended."

This statement of the rule has been frequently quoted and approved. Its absolute determination of the rights of lessor and lessee was never denied until recently.

It is not contended that this rule would permit a recovery by the plaintiff upon the facts found in the present case, but that recent cases have so enlarged the rule that the landlord is now liable if he does not discover and disclose defects which he might have discovered by active investigation. In this supposed migration of the law *Cowen* v. *Sunderland,* 145 Mass., 363, is said to be a leading case, but the judgment in that case conforms to the general rule, since the lessor had himself created and concealed the

conditions from which the injury resulted. Some inattention to the meanings of words appears in the opinion in that case; but it did not mislead the court in the judgment rendered, nor will it mislead others if it is remembered that the rule does not permit an "implied warranty" and that a lessor who, with knowledge, conceals sources of peril which are not discoverable by the lessee is not guilty of negligence, but of fraud. Nor does the migratory movement appear in *Minor* v. *Sharon,* 112 Mass., 477, or in *Cutter* v. *Hamlen,* 147 Mass., 471, for in those cases the lessors had actual knowledge of conditions which could not be discovered by the lessees, and which would imperil the health and lives of their families. It was because of the concealment of those known conditions that the lessors were adjudged to be liable, the view of the court being that actual knowledge of conditions from which peril will naturally arise, is tantamount to like knowledge of the peril. That the Supreme Judicial Court of Massachusetts regards this subject as within the rule that it is the judicial function to declare and apply the law as it is, appears very clearly in *Bowe, Admr.,* v. *Hunking et al,* 135 Mass., 380, where the ground of decision is concisely stated to be "that no action lies by a tenant against a landlord on account of the condition of the premises hired in the absence of an express warranty, or of actual deceit."

But counsel for the plaintiff is justified in the claim that the doctrine for which he contends is recognized in *Hines* v. *Willcox,* 96 Tenn., 148. In that case there was a reversal of the judgment below because the trial judge, intelligently discriminating between fraud and negligence, had, in a case of this character, instructed the jury in accordance with the established rule as already stated. But it is incorrect to say that the doctrine of that case has ever been followed, except in a later opinion in the same case. It was not followed by the Supreme Court of Kansas in *Moore* v. *Parker et al,* 64 Pac. Rep., 975, for the petition which was there held to state a cause of action against the lessor alleged his actual knowledge of the dangerous condition. Nor was it followed in *Thum Brothers* v. *Rhodes,* 12 Colo. App., 245, for in that case the judgment was in favor of the lessor, and the established rule was stated as follows:

"Where a lease is taken of the portion of a building where dangerous conditions exist, the lessee will be chargeable with knowledge

of defects which are patent, and unless he has fortified himself by an express warranty of the safety of the building, or unless his lessor, with knowledge of some defect which endangers the building and which an inspection will not disclose, is guilty of fraud by concealing the defect from him, he will have no remedy against his landlord for a loss sustained in consequence of the unsafe conditions."

In cases of this character there is no place for the doctrines or phrases of the law of negligence. Negligence is the violation of an obligation to exercise care. That obligation may inhere in the relations into which parties have been brought by contract, but it is not an incident to the making of the contract. What the law exacts in that regard is not care, but honesty. In the notable exception to the rule of *caveat emptor,* the obligation of a manufacturer to furnish articles fit for a purpose which has been designated, there is introduced no element from the law of negligence. The obligation is imposed by implied contract. Lawyers have not been mistaken in the universal belief that while the law does not permit one party to defraud the other in the making of a contract, it does not constitute either the guardian of the other. The case chiefly relied upon is not reconcilable with the principles of the law nor with the decided cases which are entitled to be recognized as authoritative. It is attractive only as a suggestion of the intellectual repose which one may enjoy when he determines the liabilities of parties according to his individual notions of personal duty, instead of seeking the grounds of decision in the rules which have been approved by the composite judgment of those who have established our system of jurisprudence. No other question is presented by the facts found below.

*Judgment affirmed.*