**MARSHMAN, Admr. of the Estate of Angus Antcliff, deceased, Plaintiff-Appellant, v. STANLEY et, Defendants-Appellees, SCOTT et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22331.   Decided August 11, 1952.

Donald M. Marshman, Louis J. Doria, Cleveland, for plaintiff-appellant.

Arter, Hadden, Wykoff & Van Duzer, Cleveland, for defendants-appellees.

William M. Byrnes, Cleveland, for defendants-appellants.

## OPINION

**By SKEEL, J.:**

This action comes to this court by reason of two appeals on questions of law from judgments entered in the Common Pleas Court of Cuyahoga County. The action is one for the alleged wrongful death of Angus Antcliff. The plaintiff as administrator of the estate of Angus Antcliff filed this action against Frances E. Stanley, Rhoda Stanley Latta, Laura Stanley Snell. Logan Scott and Margaret Nease alleging the following facts as the basis of his action.

The defendants. Frances E. Stanley, Rhoda Stanley Latta and Laura Stanley Snell are the owners in fee of property located at the northeast corner of East 84th Street and Euclid Avenue. On the front of the lot is the Venice Apartments consisting of stores fronting on Euclid Avenue with living apart-

ments on the floors above. In the rear of the apartment building is the old John Stanley residence now used as a rooming house and in the rear of the lot there is a garage which was rented for commercial purposes. The Stanley heirs employed Steller and Stofer, Inc., to manage the property for them. Logan Scott rented the old residence for rooming house purposes February 1, 1945, having come into possession of such rooming house business by assignment from a former lessee and owner April 20, 1944. While in possession of such rooming house, Logan Scott tapped a gas line in the basement, installed a shut-off valve at the point where the line was tapped and then ran a gas pipe from there through the first floor into what was known as Room 4 and up and through the ceiling and under the floor of room 10 which is located over room 4 on the second floor of the building. The line was to be used for the purpose of installing a stove in room 10, but the work was not completed and it is the claim of the plaintiff that he failed to cap said gas pipe which ended above the ceiling of room 4 and under the floor of room 10. This claim is disputed by Scott. Logan Scott sold his rooming house business to Margaret Nease and Mabel Wittrock about the first of March, 1946. His then lease which ran from February 1, 1946 to January 31, 1947 was cancelled as of April 1, 1946 and a new lease was given by the agents of the owners to Margaret Nease and Mabel Wittrock for one year beginning April 1, 1946. Shortly thereafter, Margaret Nease received an assignment of the interest of Mabel Wittrock. Some time during September, 1946, Margaret Nease rented room 10 to Angus and Florence Antcliff, husband and wife. About 11:00 A. M of January 9. 1947, Angus Antcliff attempted to light his pipe when a violent gas explosion took place as a result of which both Mr. and Mrs. Antcliff came to their death.

Upon trial the jury returned a verdict of $25,000.00 against all defendants. The defendants, Frances E. Stanley. Rhoda Stanley Latta and Laura Stanley Snell filed a motion non obstante veredicto which motion was granted and judgment entered for these defendants. It is from this entry that plaintiff's appeal is taken. The remaining defendants have appealed from the judgment entered against them. We will consider the plaintiff's appeal first. The assignment of error is as follows:

"1. The court erred in sustaining the motion of the defendants. Frances E. Stanley, Rhoda Stanley Latta and Laura Stanley Snell filed June 4. 1951 for judgment notwithstanding the verdict returned against said defendants by the jury on May 29, 1951."

The evidence discloses that the defendant, Scott, became the lessee of the rooming house at a stated monthly rental which lease required him to make all inside repairs. During the time he owned the ·rooming house business he was in complete and exclusive possession of the building. This defendant admitted putting in the gas pipe from the gas line in the basement to a point under the floor of room 10 without getting a permit from the building department of the city of Cleveland. He installed a shut-off valve in the basement which, when the work was concluded, was turned off. He claims that the end of the pipe which did not go above the floor in room 10, was capped. The East Ohio Gas Company employees, who were called to the building to turn off the gas during the fire, found the shut-off valve in the basement had been opened and further found that there was no cap or plug on the end of the pipe under the floor of room 10. The firemen also testified that said pipe was uncapped upon their inspection after the fire.

Sec. 1428 of the Ordinances of the city of Cleveland (being a part of the building code of the city) provides in part:

"* * * After the piping is run all openings shall be closed with iron caps * * * and all unused outlets shall be kept capped * * *."

There is no evidence in the record nor does the plaintiff claim that the Stanley heirs or their agent, Steller & Stofer. Inc., or any of its officers or employees had any knowledge of the installation. of the gas pipe by Scott or of the condition in which it is claimed the work was done. Nor does the record even suggest that Margaret Nease knew about the gas pipe installation.

The plaintiff's theory of the liability of the defendants, Frances E. Stanley, Rhoda Stanley Latta and Laura Stanley Snell, is that after the gas pipe was installed in such a negligent manner as to create a dangerous and unsafe condition. they, the Stanley heirs, regained the possession of the building by virtue of the fact that they cancelled the Scott lease and leased the rooming house to Margaret Nease and Mabel Wittrock and that as stated in plaintiff-appellant's brief:

"* * * they had as much time as they needed to take. and an ample authority, to inspect their premises and discover this fire-trap and remove it so this occupied rooming-house would be fit for habitation by human beings before they again rented it occupied to a new proprietor. Plaintiff contends this was a duty they owed the occupants and prospective roomers when this rooming-house returned to their possession and control, particularly since they themselves specified that the prop-

erty could be used "for rooming-house purposes only, and for no other purpose," and that this breach of duty on their part was negligence which concurred and united with the similar negligence of the defendants, Logan Scott and Margaret Nease, to cause the wrongful death of Angus Antcliff."

This theory of liability growing out of the relationship of landlord and tenant cannot be supported. The plaintiff's decedent was upon the premises as the tenant of Margaret Nease who, during the continuance of such contractual relationship was in the exclusive possession of the building as lessee and tenant of the Stanley heirs. There was no legal relation whatever between the Stanley heirs and Antcliff.

The general rule defining the duty of a landlord for injuries sustained by a tenant or one upon the premises by permission or under the authority of the tenant because of latent defects or dangers on the property where the landlord is not guilty of concealment or fraud is stated in 110 A. L. R. 756 N:

"The cases are practically agreed that where the right of possession and enjoyment of the leased premises passes to the lessee, in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant, the rule of caveat emptor applies, and the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein; and this rule applies to the wife of the tenant and other members of his family; also to guests of the tenant; to a member of a lodge which is a tenant; to a customer or patron of a tenant; and to a servant of a tenant."

In restatement of the law of Torts the comment following paragraph 358, page 969 is as follows:

"Extent of lessor's duty—inspection. In order that a lessor of land may be subject to liability under the rule stated in this Section he must actually know of the condition and realize that it involves a risk of harm to those who may use the land in ignorance of it. The lessor is under no duty to either his lessee or those who may be expected to enter the land in his right, to inspect the land in order to discover its actual condition; nor is he under any duty to warn the lessee of a condition which he has reason to believe that the lessee will discover or of the extent of the risk involved in an obvious condition unless he should realize that the lessee is unlikely to appreciate it."

The courts of Ohio without deviation have followed the rule as thus stated as between landlord and tenant or as between the landlord and sub-tenants or between a tenant and those holding under his authority.

**Burdick v. Cheadle, et al., 26 Oh St 393; Shindelbeck v. Moon,**

32 Oh St 264; **Shinkle, etc. v. Birney, et al,** 68 Oh St 328, 67 N. E. 715; **Marqua v. Martin,** 109 Oh St 56, 141 N. E. 654; **Goodall v. Deters,** 121 Oh St 432, 169 N. E. 443; **Berkowitz v. Winston,** 128 Oh St 611, 193 N. E. 343; **Ripple v. Bank,** 143 Oh St 614, 56 N. E. 2d 298, and concurring opinion by Judge Hart at Page 620; 52 C. J. S. page 12, Landlord & Tenant, 32 Am. Juris. 597, Sec. 723.

In the Burdick case, supra, at page 397, the court said:

"Nor can the plaintiff hold the lessor liable to him for the injuries sustained upon his contract of lease with the tenant in possession. In disposing of this question, we have regarded Mattison as standing in the shoes of the original lessees.

"The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes this rule. There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the lessee intends to put them. If they be unsafe or unfit, it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so. And if the landlord warrants their fitness, the covenant stands for the benefit of the lessee and not for the benefit of strangers to the contract. And so, if the lessor engages with the lessee, to keep the premises in repair, a breach of the engagement gives a right of action only to the lessee. But whatever may be the rights and duties respectively of landlord and tenant, as between themselves, the latter can not, by the terms of the lease, be discharged from the duty to his guests, and in a greater degree to his customers, of caring for their safety. And while such persons may reasonably expect the exercise of care for their safety from the person who invites them, they have no right to expect like care from his landlord. with whom they are not in privity. Hence, it is well stated by Shearmann and Redfield, in their work on Negligence (Section 503), that the guests or customers of the tenant must seek redress for injuries, caused by defects in the premises, from the tenant and not from the landlord, even though the defects existed when the lease was made; for if they had not entered the premises at the request of the tenant, or under his license, they would not have suffered injury."

The Supreme Court copied and approved the foregoing quotation in the Ripple case, supra. The latest decision of our Supreme Court in which the foregoing principle of law and

the cases above cited were approved and affirmed, is **Brown v. Cleveland Baseball Co., 158 Oh St 1.**

We must conclude, therefore, there being no claim of fraud or concealment of the alleged dangerous condition of the gas pipe nor proof to support such claim as against the Stanley heirs, the court was correct in granting their motion for judgment notwithstanding the verdict.

The plaintiff's claim of error in this respect is therefore overruled and the judgment non obstante veredicto entered for the Stanley heirs affirmed.

Coming now to the appeal of the defendants, Margaret Nease and Logan Scott.

Four grounds of error are set forth:

"1. Misconduct of a juror

"2. Verdict is excessive

"3. On failing to rule on liability of Stanley heirs at the conclusion of plaintiff's case

"4. Verdict not supported by the evidence or the law."

We will first give consideration to the fourth claim of error as to the defendant, Nease. By the undisputed evidence, she became the proprietor of the rooming house by purchase from Scott about the 15th of March, 1946. She was put into full and complete possession of the rooming house and the rooming house business. She was given a lease by the agents of the Stanley heirs for one year as of April 1, 1946. At the time she took possession, she had no knowledge of the gas pipe installed for room 10 by Scott, nor did she at any time prior to the gas explosion know of the condition in which the pipe had been left. Her liability under the undisputed facts is no different than that of the Stanley heirs. There is no evidence that she was guilty of fraud or concealment of the danger which caused the death of Antcliff. The judgment against this defendant is therefore reversed and final judgment entered in her favor.

The claim of liability of the plaintiff against the defendant, Scott, is not founded upon the relationship of landlord and tenant. Here the plaintiff's case is based upon negligence. The negligent act alleged was the failure to cap the end of an unused gas line installed by said defendant in violation of the building code of the city of Cleveland. It is claimed that the failure to cap said gas line was the direct and proximate cause of the death of Angus Antcliff. There is abundant evidence in the record to support this claim. The defendant's claim that the verdict is not sustained by sufficient evidence must be overruled.

The next claim of error of the defendant, Scott, is based

on the alleged misconduct of a juror. On the last day of the trial one of the jurors reported late at the morning session of the court. She was interrogated by the judge in chambers in the absence of counsel and a record made of what was said. She explained the reason for being late as follows:

"Court: Why were you late?

"Juror: I just felt I had to know one little thing, whether it could happen in a normal case, and so I talked by phone with a plumber that I had known and asked him, Mr. Bunowitz. I simply asked the question whether a cap could blow off if it was on and he said, No. I thought in my mind, was it possible that could be on and the force of the explosion could blow it off? He said 'No, that couldn't possibly be true.' "

There can be no question but that the juror's conduct constituted error, but under the undisputed facts in this case we hold that such error was not prejudicial to this defendant. The court in overruling the separate motions of the defendants to declare a mistrial entered by each when they were informed of the juror's conduct and given a transcript of what took place in chambers did not commit an abuse of discretion.

We come now to the remaining questions of error which have to do with the amount of the verdict. It is first claimed that the court should have granted the motion of the Stanley heirs for judgment at the end of the plaintiff's case and that failure to do so influenced the jury to return a substantial verdict based on the financial standing of the Stanley heirs. No complaint is registered against the court's charge on the subject of damages and we do not believe the defendant Scott's rights were in any way prejudiced by holding the Stanley heirs in until after judgment when a motion for judgment non obstante veredicto was granted.

The evidence as to the state of health of the deceased, his relationship with his family and the amount of his income are in the record. The deceased was born in August, 1920 and was 26 years old at the time of his death. He was married, but his wife died a few hours after he did, from injuries received in the same fire. The father of Angus Antcliff was seventy' years old on the date of the trial and was in poor health. He had retired at the age of 65 as a civil service employee of the state of Michigan and was receiving a pension of a little over $3.00 per day. The deceased had two sisters and four brothers, two of whom had not been heard from for a number of years. The others are married and maintaining their separate establishments on moderate incomes. The deceased was employed as a machine helper at the time of his death at a rate of 82c per hour or about $32.50 per week. He was a man of good habits and of recog-

nized ability. Aside from an army allotment to his father while he was in the service, there is no evidence that either he or any of his brothers contributed to their father's support. Under all the foregoing facts, a judgment from pecuniary loss to the heirs of the deceased of $25,000.00 must be excessive. The court therefore grants a remittitur of $10,000.00 which, if accepted within 10 days from the date of this finding, the court will modify the judgment to $15,000.00 and as modified, the judgment will be affirmed. Otherwise the judgment against Scott will be reversed as excessive and a new trial ordered.

Exceptions. Order See Journal.

HURD, J, THOMPSON, J, concur.