[Cite as *Boatwright v. Penn-Ohio Logistics*, 2012-Ohio-6238.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LAWRENCE BOATWRIGHT, | ) | CASE NO.    12 MA 39 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| PENN-OHIO LOGISTICS, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                                          Case No. 11CV1180.

JUDGMENT:                                          Affirmed.

APPEARANCES:
For Plaintiff-Appellant:                          Attorney Gary Kisling
                                                          3412 West Market Street
                                                          Akron, Ohio  44333

For Defendants-Appellees:                    Attorney Matthew Vansuch
                                                          Attorney Kevin Murphy
                                                          108 Main Avenue, Suite 500
                                                          Warren, Ohio  44481

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                                          Dated:  December 24, 2012

VUKOVICH, J.

{¶1} Plaintiff-appellant Lawrence Boatwright appeals the decision of the Mahoning County Common Pleas Court granting defendants-appellees American Steel City Industrial Leasing, Inc. (ASC) and Bill Marsteller's Motion for Summary Judgment. Boatwright was injured while working at a facility leased from ASC to Boatwright's employer, Penn-Ohio Logistics (Penn-Ohio). The floor of the warehouse collapsed while Boatwright was stacking steel, causing him and the steel to fall into the basement below. Boatwright sued ASC and Marsteller (owner of ASC) for damages based on premise liability. Five issues are raised in this case. The first is whether ASC is a landlord out of possession and thus is not liable for damages on the premises. The second is whether the basement can be considered to be a defect under the facts of this case. The third issue is when a lease requires a landlord to follow all laws, does the failure to follow any law operate to make the landlord liable for the accident? The fourth issue is whether Marsteller is individually liable for his alleged failure to inform Penn-Ohio of the basement. The fifth and final issue is whether the Ohio Bureau of Workers' Compensation has a subrogation claim. For the reasons expressed below, the trial court's grant of summary judgment is hereby affirmed.

## Statement of the Case

{¶2} On August 29, 2006, Boatwright was injured while working at a warehouse located at 3710 Hendricks Road, Austintown, Mahoning County, Ohio. Boatwright's employer, Penn-Ohio Logistics, leased portions of this warehouse from ASC. Specifically Penn-Ohio was leasing Bays 23, 23A, 25, 25A, 27, 29 and a tornado shelter that was located under a portion of one of the bays it was leasing.

{¶3} In addition to the tornado shelter, there was a basement area under bay 25. Portions of this basement area were leased to Kundel Industries. Penn-Ohio allegedly did not know there were any basement areas other than the tornado shelter it leased.

{¶4} At the time of the injury, Boatwright was unloading and stacking steel bundles in bay 25 with one of his fellow employees, Ray Queen. Due to weight of

the steel, the floor on which they were stacking steel collapsed, causing the employees and the steel to fall to the basement below. The collapse did not occur over the tornado shelter; Penn-Ohio allegedly was unaware there was a basement area located under where the collapse occurred. Steel and concrete landed on both employees causing extensive injuries.

{¶5} In 2008, Boatwright filed a complaint against Penn-Ohio, ASC, and Marsteller. That complaint was voluntarily dismissed in 2010.

{¶6} In April 2011, the complaint was refiled and the Ohio Bureau of Workers' Compensation (OBWC) was added as a defendant. In the 2011 complaint, Boatwright alleged Marsteller and ASC were negligent in failing to disclose that there was a basement below bay 25 when Marsteller and ASC knew that Penn-Ohio was stacking large amounts of steel in bay 25. That complaint also contained employer intentional tort claims against Penn-Ohio and a subrogation claim against the OBWC. In May 2011 the claims against Penn-Ohio were voluntarily dismissed by Boatwright. In July 2011, upon the motion of OBWC, the trial court realigned the parties and named OBWC as a plaintiff since its interests were aligned with those of Boatwright.

{¶7} ASC and Marsteller answered the complaint and filed a motion for summary judgment. In the motion, ASC and Marsteller claimed that summary judgment should be granted in their favor for five reasons.

{¶8} First, ASC and Marsteller claimed that the doctrine of *stare decisis* required summary judgment to be granted in their favor. In 2010, the Eleventh Appellate District, facing the same arguments and issues regarding this same accident that caused injuries and ultimately the death of Queen, granted summary judgment in ASC and Marsteller's favor. *Currier v. Penn-Ohio Logistics*, 187 Ohio App.3d 32, 2010-Ohio-198, 931 N.E.2d 129 (11th Dist.).

{¶9} Second, ASC claimed it was not in possession or control of Penn-Ohio's premises. Thus, it owed no duty of care to Boatwright. It argued that in regard to commercial leases, the rule in Ohio is caveat emptor. As such, a lessor has no liability for any injuries to third parties occurring on leased property that is out of the lessor's possession and control.

{¶10} Third, ASC and Marsteller asserted that they were under no duty to disclose the lack of solid earth under the floor, i.e. the existence of the basement, because not only is the mere existence of a basement not a defect, but even if it is a defect, in regards to commercial leases there is no requirement to disclose a defect.

{¶11} Fourth, ASC argued that even if it was not a landlord out of possession it still is not liable because ASC and Marsteller had no notice that Penn-Ohio was stacking steel beams in a quantity that substantially exceeded the floor's capacity.

{¶12} Fifth, Marsteller asserted that he cannot be personally liable because the actions he took were performed in his capacity as president.

{¶13} Boatwright disputed all of these positions in his motion in opposition. He claimed that *Currier* is not binding. He asserted that ASC is a landlord in possession because Marsteller had the right to access the premises leased by Penn-Ohio and the basement below bay 25. Regardless, according to him, even if ASC was not in possession, Marsteller and ASC still had duty to disclose the existence of a basement, which was a defect that was not obvious or was hidden. Furthermore, Boatwright argued that the lease required ASC to follow the law. When ASC did not post weight limits for the floor, which is required by law, it was not following the law. Thus, it breached the contract and was liable for the injury. Lastly, he contends that Marsteller can be found liable because the injured person may sue the principal and the agent, i.e. the corporation and the corporation's employee.

{¶14} After consideration of both parties' motions, the magistrate entered a decision granting summary judgment in ASC and Marsteller's favor. Boatwright timely objected to that decision. ASC and Marsteller responded to those objections. The trial court reviewed those objections and granted summary judgment in ASC and Marsteller's favor. Boatwright timely appealed that decision.

## Standard of Review

{¶15} All four assignments of error address the grant of summary judgment. Thus, the standard of review employed by this court in reviewing each argument is the same, a de novo standard of review. *Cole v. Am. Industries & Resources Corp.,* 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we apply the same test as the trial court. Civ.R. 56(C) provides that the trial court shall render

summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming,* 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

<u>First Assignment of Error</u>

**{¶16}** "The trial court erred to the prejudice of appellant in finding that ASC was a landlord out of possession."

**{¶17}** It is undisputed that this case involves a commercial lease. "[T]he commercial lessor's liability is governed by traditional common law principles. Under the common law, one having neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises." *Currier*, 187 Ohio St.3d 32, 2010-Ohio-198, ¶ 16, quoting *Hendrix v. Eighth & Walnut Corp.*, 1 Ohio St.3d 205,207, 438 N.E.2d 1149. *See also Target Industries v. Stubbs,* 8th Dist. No. 95101, 2011–Ohio–1563, *appeal not allowed by* 129 Ohio St.3d 1505, 2011–Ohio–5358, 955 N.E.2d 387.

**{¶18}** The trial court heavily relied on *Currier* in finding that ASC was not a landlord in possession. As aforementioned, Queen died as a result of this same accident. His estate filed an action in Trumbull County Common Pleas Court seeking damages for his death. Many of the same arguments were presented to that court. The Trumbull County Common Pleas Court granted summary judgment in ASC's favor. That cause was appealed to our sister district, the Eleventh Appellate District. That court affirmed the Trumbull County Common Pleas Court's decision. In finding that ASC was not a landlord in possession, the Eleventh Appellate District reasoned:

> We note that American's industrial complex covers 750,000 square feet and that American leases other sections of the complex to other tenants and retains certain parts of the complex for its own uses. It is undisputed that Marsteller routinely walks through the complex to get to areas retained by American or to meet with other tenants. As the Supreme Court held in *Hendrix,* 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149: "Although [the lessor] reserved the right to enter the

premises * * * for a few specified purposes, such as to inspect the premises, reservation of such a limited right does not justify a finding that the lessor retained control of the premises. *Cooper v. Roose*[, 151 Ohio St. 316, 39 O.O. 145, 85 N.E.2d 545]; *Kauffman v. First–Central Trust Co.* (1949), 151 Ohio St. 298, 39 O.O. 137, 85 N.E.2d 796]; *Berkowitz v. Winston* (1934), 128 Ohio St. 611[, 1 O.O. 269, 193 N.E. 343]." Id. at 207, 1 OBR 230, 438 N.E.2d 1149.

We note that in most leases, whether residential or commercial, the landlord retains a right to inspect. As the court held in *Hendrix,* this does not equate with the power to admit or exclude, the sine qua non of retained possession and control of commercial property. *Id.*

*Currier*, ¶ 34-35.

**{¶19}** The trial court's reliance on *Currier* as persuasive authority is not misplaced. The reasoning is sound, and as the Mahoning County Common Pleas Court noted, the *Currier* court's reasoning involves analysis of the identical facts of this case.

**{¶20}** Boatwright does raise three additional facts that were not raised and/or addressed in the Eleventh Appellate District's *Currier* decision. He argues that the following facts demonstrate that ASC and Marsteller retained control and possession over the premises:  1) ASC's alleged possession of the basement below bay 25; 2) the fact that Marsteller did not inform Penn-Ohio about the basement below bay 25, and; 3) that Marsteller and ASC retained control over the premises by having equipment in the bays Penn-Ohio was leasing and allowing Youngstown Steel Door, previous owner of property, to still operate on the property.  Based upon these facts Boatwright asserts that ASC is not a landlord out of possession, but rather is an occupier and has control over the premises.

**{¶21}** The distinction is important because if ASC was an occupier it had a duty to exercise reasonable care for the protection of its invitees.  This means the occupier must not only use care not to injure the visitor by negligent activities and warn him of latent dangers that the occupier knows of, but the occupier also has to

inspect the premises to discover possible dangerous conditions of which he does not know and take reasonable precautions to protect the invitee from dangers which are foreseeable from use. *Brymer v. Giant Eagle, Inc.*, 11th Dist. No. 2010-L-134, 2011-Ohio-4022, ¶ 11.

**{¶22}** Despite his insistence to the contrary, the three facts brought to this court's attention do not render ASC an occupier. Each of them actually evince that ASC was not in possession or control of bay 25 or the basement below it and thus, ASC was a landlord out of possession.

**{¶23}** As aforementioned, the first fact is ASC's alleged possession over the basement below bay 25. Boatwright contends that ASC's possession and control over that basement is displayed by the fact that ASC rented that space to Kundel Industries.

**{¶24}** The fact that ASC had the authority to lease the space to Kundel Industries and did so prior to the accident does not show ASC had possession and control over the premises at the time of the accident. Kundel Industries rented the basement at the time of the accident. As the *Currier* court noted, once the space is leased the landlord, although having the right to inspect the property, ceases to have possession and control of the space. Thus, ASC and Marsteller no longer had possession or control of the space once it was leased to Kundel Industries.

**{¶25}** Next, Boatwright contends that Marsteller never told Penn-Ohio about the basement below bay 25 and this somehow shows that ASC and Marsteller exercised control over the premises. Even if Penn-Ohio was not told of the existence of the basement, this does not demonstrate that Marsteller and ASC maintained control and possession of the basement below bay 25. The most this shows is that Penn-Ohio had no control or possession over that area. However, that is not the test for imposing liability on the commercial lessor.

**{¶26}** The next fact is that when ASC rented bays to Penn-Ohio, including bay 25, ASC allegedly allowed Youngstown Steel Door to maintain some of its operations in the leased space. Boatwright also claims that Marsteller moved "stuff that was in areas control by Penn-Ohio into Section 25 that eventually collapsed." Appellant Brief page 13.

{¶27} The depositions show that Marsteller bought this property from Youngstown Steel Door. However, instead of Youngstown Steel Door moving completely out of the facility that day, it was slowly phasing out. (Marsteller Depo. 153, 207; Hallsky (Owner of Penn-Ohio) Depo. 76). Thus, some of its operations continued at the facility. Similar to the above analysis, this does not show that ASC and Marsteller were in possession and control. If Youngstown Steel Door was operating in bay 25 then it was in possession and control of that bay.

{¶28} The depositions also show that when Penn-Ohio asked Marsteller to rent it more space to expand its operations, a lease was drawn up for bays 25, 25A, and 27A. (Hallsky Depo. 73.) At that time those bays had equipment, inventory and/or raw material in them that did not belong to Penn-Ohio. Thus, that material needed to be moved so that Penn-Ohio could use the space. (Hallsky Depo. 74). The owner of Penn-Ohio explained that Marsteller would move material out of the area while Penn-Ohio moved the steel it was storing in. (Hallsky Depo. 74.) The deposition indicates this was a process that took some time. However, at the time of the accident, from the depositions it appears that Marsteller had removed all of his material from bay 25 and Penn-Ohio was the only one using it; there is no evidence to show that Marsteller was still occupying any areas leased by Penn-Ohio. Moreover, the facts clearly show that Penn-Ohio was stacking steel where the collapse occurred. There is no indication in the record that other equipment or materials were present where the collapse occurred that were the property of Marsteller. Thus, given the above, it is difficult to conclude that this argument shows that ASC and Marsteller retained possession and control over the premises leased by Penn-Ohio.

{¶29} Consequently, the facts referenced by Boatwright do not demonstrate or create a genuine issue of material fact that ASC was an occupier. Rather, the undisputed facts clearly indicate that ASC was a landlord out of possession.

{¶30} The last argument made by Boatwright under this assignment of error is that a landlord maintains control over common areas. He asserts that when ASC rented the basement below bay 25, the ceiling of the basement below bay 25 and the floor of bay 25 became a common area.

{¶31} This argument, while somewhat creative, misconstrues what constitutes a common area. It is true that a landlord who retains possession and control of common areas is, in general, liable for injuries arising from his neglect to keep the same in proper repair. *Prendergast v. Ginsburg*, 119 Ohio St. 360, 363, 164 N.E. 345 (1928) (discussing landlord out possession general rule).

{¶32} In discussing common areas, the cases discuss common porches, stairways, and hallways. There is no case law where a ceiling/floor that is shared by two tenants is considered a common area. To consider the ceiling of one unit that also constitutes the floor of another unit a common area is a stretch.

{¶33} Furthermore, in *Prendergast* the Court specifically indicated that common areas are "for use of several tenants." By definition "several" is a number "more than two or three but not many." http://www.thefreedictionary.com/several. Thus, it must be able to be used by more than two tenants. Clearly, here the ceiling above the basement is only used by Kundel and the floor to bay 25 is only used by Penn-Ohio. Thus, the floor/ceiling is not a common area.

{¶34} That said, even if we were to find that the floor/ceiling is a common area, the landlord is only required to keep it in "proper repair." The facts of this case do not suggest that the floor/ceiling was not in proper repair and that that is why it collapsed. Rather, the evidence shows that the floor/ceiling collapsed because it was overloaded. Employees from Penn-Ohio clearly indicated that that much steel would not have been placed in bay 25 had they known that there was a basement below it. No testimony was offered that the floor/ceiling was in need of repair.

{¶35} For all the above reasons, there is no merit to the argument as it regards common areas.

{¶36} In conclusion, this assignment of error lacks merit. The trial court's finding that the evidence, even when viewed in the light most favorable to Boatwright, showed that ASC was a landlord out of possession is upheld.

Second Assignment of Error

{¶37} "The trial court erred to the prejudice of appellant in finding that ASC was not liable for the nondisclosure of a defect."

**{¶38}** Boatwright contends that even if we find that the trial court's conclusion that ASC is a landlord out of possession is correct, ASC and Marsteller are still liable because they failed to disclose a hidden or latent defect. Boatwright additionally contends that the doctrine of caveat emptor does not apply and cites *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 644 N.E.2d 291 (1994) to support his position. Boatwright claims that the basement, itself, is the hidden or latent defect. In making this argument Boatwright acknowledges that a basement is usually not a defect. However, he contends that it is a defect when the existence of the basement creates a weaker floor and that floor is used to stack steel. Thus, he is in essence arguing that the floor is defective for the purpose used.

**{¶39}** ASC counters this argument asserting that the doctrine of caveat emptor applies to the commercial setting unless it can be shown that the commercial landlord fraudulently concealed defects that are not discoverable by the tenant upon practicable examination. *Shinkle v. Birney*, 68 Ohio St. 328, 334 (1903). It contends that the basement is not a defect and that it was discoverable by reasonable inspection.

**{¶40}** The trial court found that the basement was not a defect and that there was no evidence that ASC fraudulently concealed "anything about this property." 01/30/12 J.E.

**{¶41}** Similar to Assignment of Error No. 1, these issues of whether the doctrine of caveat emptor applies, whether the basement is a defect and whether ASC fraudulently concealed the basement were raised to our sister district in *Currier*. The Eleventh Appellate District specifically found that while the rule in Ohio has changed over the years regarding the duties of landlords under residential leases, in the context of a commercial lease, the doctrine of caveat emptor still applies. *Currier*, 187 Ohio App.3d 32, 2010-Ohio-198, 931 N.E.2d 129, ¶ 16, citing *Parma Podiatry Clinic v. Madison Clinic, Inc.* (Mar. 22, 1996), 11th Dist. No. 95-L-039 and *Hendrix*, 1 Ohio St.3d 205, 207, 438 N.E.2d 1149. Furthermore, regarding the reliance on the *Shump* case and the standard to be used to determine if anything was concealed, the Eleventh District, in *Currier*, espoused:

Next, appellant argues that even if American was not liable as a landlord in possession or control or in violation of an agreement in the lease, American would still be liable because it concealed or failed to disclose a known, nonobvious defect. Appellant cites *Shump v. First Continental–Robinwood Assoc.* (1994), 71 Ohio St.3d 414, 644 N.E.2d 291, in support. However, *Shump* involved a residential lease and is therefore not applicable.

In *Stackhouse,* 83 Ohio St. 339, 94 N.E. 746, the Ohio Supreme Court held: "A lessor of a building out of possession and control is not liable to the tenant or other person rightfully on the premises for their condition, in the absence of deceit * * *." *Id.* at paragraph one of the syllabus. In *Shinkle v. Birney* (1903), 68 Ohio St. 328, 67 N.E. 715, the Supreme Court explained a commercial lessor's liability based on deceit as follows: "[I]f the lessor has knowledge of defects in the premises which are not discoverable by the tenant upon practicable examination, * * * liability arises from the fraudulent concealment of such defects * * *." *Id.* at 334. The court held that such a claim required proof of actual fraud. *Id.*

*Currier*, 187 Ohio App.3d 32, 2010-Ohio-198, ¶ 44-45.

**{¶42}** This statement of the law is accurate. Consequently, in order for ASC and Marsteller to be liable, Boatwright had to show that there was fraudulent concealment. If that is not shown, the doctrine of caveat emptor applies.

**{¶43}** Regarding whether the basement was a defect and was fraudulently concealed, the *Currier* court explained:

Here, appellant argues that the basement under the floor where Queen was working was a defect. However, there is nothing about a basement that would suggest that by its nature, a basement is a defect. Of course, basements are found in many residences and commercial buildings. They can be full or partial. Sometimes they have high ceilings and are easily observable from the outside; sometimes the

ceilings are lower and less observable. In any event, there is no evidence that the basement here could not have been easily discovered by Penn–Ohio in a reasonable inspection.

Our review of the record reveals that the only alleged evidence of fraudulent concealment is that American was aware that Penn–Ohio was storing steel and did not advise it of the existence of the basement. Contrary to appellant's argument, there is no record evidence that Marsteller knew that Penn–Ohio was storing "dangerous" amounts of steel on the floor. Appellant cites the deposition testimony of Jennarong Montgomery, an employee of another lessee in the building, in support. However, this witness merely testified that Marsteller came to the site "maybe a couple times a week," and most likely would have seen Penn–Ohio "stacking steel there." Neither he nor anyone else testified that Marsteller knew that Queen or any other Penn–Ohio employee had stacked dangerous amounts of steel prior to the accident. Further, there is no evidence that Marsteller was in the building at any time within three weeks prior to the accident.

In any event, there is no evidence that American concealed the basement. There is no evidence that Penn–Ohio ever asked American whether the floor on which it was storing steel had a basement beneath it. There is no evidence that Penn–Ohio ever attempted to inspect the floor or the area beneath it. Further, there is no evidence that Penn–Ohio was prevented from inspecting or unable to inspect this area during the five months it was in possession and control of the leased premises prior to Queen's injury.

Contrary to appellant's argument, Penn–Ohio's owner Felix ("Bud") Hallsky did not testify that one "cannot determine" whether there is a basement under the floor. He merely testified that when looking at the building from the outside, it was not apparent that there were two

levels. Further, contrary to appellant's argument, neither Hallsky nor Penn–Ohio's employee Richard Perline testified that Penn–Ohio would not have rented the space if either of them knew there was a basement under the floor.

In *Hendrix,* 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149, the Ohio Supreme Court held that even though evidence was presented that the lessor under a commercial lease was aware of the existence of defects at the property, the lessor was not liable for injuries resulting therefrom. The court held: "[W]e are not persuaded that the allegations regarding the lessor's knowledge of defects, even if established, would [result in liability] in the context of a commercial lease." *Id.* at 208.

Here, there is no evidence that the basement was defective. Because the leased premises were the subject of a commercial lease and were available for inspection, American had no duty to disclose it. Without such a duty, there was no fraudulent concealment.

*Currier*, 187 Ohio App.3d 32, 2010-Ohio-198, ¶ 46-51.

**{¶44}** This reasoning is accurate and sound. Furthermore, it is bolstered by the fact that Boatwright's own testimony acknowledges that while he did not know of the basement below bay 25, he was aware that other portions of the property contained basements. (Boatwright Depo. 32-33). Penn-Ohio's manager, Wilson, also appeared to acknowledge that in addition to the tornado shelter door there was another door on the outside that was below the building's main floor. (Wilson Dep. 33). This would indicate that another basement area existed.

**{¶45}** Furthermore, while it is acknowledged that Penn-Ohio employees testified that Kundel Industries did not want any of Penn-Ohio employees in the spaces it leased, that fact did not prevent discovery of the basement areas. Penn-Ohio could have asked Marsteller about additional basement areas in the facility. The only area it asked about was the tornado shelter, which it leased.

{¶46} Moreover, in a commercial lease setting, the lessee is in the best position to know the purpose or anticipated use of the rental property. Thus, common sense dictates that it is the lessee's, not lessor's, duty to determine if the premises are suitable for the intended use.

{¶47} Therefore, based on all of the above and the *Currier* Court's decision, the trial court's conclusion that the basement was not a defect and that there is no evidence of fraudulent concealment is correct. This assignment of error lacks merit.

Third Assignment of Error

{¶48} "The trial court erred to the predjudice [sic] of the plaintiff by failing to find that the lease imposed a duty on ASC and Martsteller [sic] to post signs indicating the load limits of the floor."

{¶49} The argument made under this assignment of error is based on the language of the lease and the failure of ASC and Marsteller to post the floor's weight capacity. The lease stated that the landlord shall comply with all laws and other public requirements affecting the leased premises. Following the accident, ASC was cited for violating the OSHA requirement that mandated the posting of the floor's weight capacity. Thus, Boatwright is claiming that because the lease was breached by ASC, ASC is liable for his injury.

{¶50} ASC counters by arguing that the only way that Boatwright can recover under this breach of contract theory is if he was a third-party beneficiary to the contract between Penn-Ohio and ASC. It contends he was not. ASC also directs this court to the *Currier* decision which rejected the same type of breach of contract argument.

{¶51} Starting with the *Currier* court's resolution of this issue, it found no merit with the breach of contract argument and explained:

> Apparently aware that violations of such regulations cannot serve as the basis for a negligence claim, see *Sabitov v. Graines,* 177 Ohio App.3d 451, 2008-Ohio-3795, 894 N.E.2d 1310, ¶ 27, appellant argues that because the parties to the lease each agreed to comply "with all laws, orders, ordinances, and other public requirements * * *

affecting the Leased Premises," American's alleged violation of the Ohio Building Code and OSHA regulations rendered it negligent, irrespective of whether it retained possession and control of the leased premises.

While we recognize that a lessor may undertake a specific duty by contract that he is not otherwise obligated to perform, the general obligation in the subject lease does not refer to any specific duty or law. Rather, it requires each party to comply with "all laws" affecting the leased premises.

We note that the cases appellant cites in support merely held that a landlord who undertakes a specific obligation under a lease may be liable for its breach. None of these cases held that a promise to comply with all laws affecting the leased premises results in negligence.

By virtue of the broad and general nature of the lease provision, it does not bind the parties to any specific obligation. It merely confirms what the law requires of all persons: compliance with the law. If we were to adopt appellant's argument, virtually any violation of any law remotely affecting the property committed by either the tenant or the landlord would result in that party's liability in negligence. There is no indication that the parties intended such a result, and we will not impose it on them.

We also observe that in *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 649 N.E.2d 1215, the Ohio Supreme Court held that "a violation of OSHA does not constitute negligence per se." Id. at 304. Further, "'The Ohio Basic Building Code is an administrative regulation, not a legislative enactment, and, as such, any violation would not constitute negligence per se.'" (Emphasis omitted.) *Zimmerman v. St. Peter's Catholic Church* (1993), 87 Ohio App.3d 752,

754, 622 N.E.2d 1184, quoting the trial court's summary-judgment entry.

Finally, in *Hendrix,* 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149, the Ohio Supreme Court held: "The finding that the lessor was out of possession and control has been held to relieve the landlord from liability for damages resulting from the condition of the premises *even in cases where the landlord agreed to make repairs.*" (Emphasis added.) Id. at 207.

Thus, even if American had agreed to comply with these specific regulations, as a landlord out of possession and control, it would not be liable for damages resulting from the condition of the leased premises.

*Currier*, 187 Ohio App.3d 32, 2010-Ohio-198, ¶ 37-43.

**{¶52}** Without discussing breach of contract/third-party beneficiary law, the *Currier* decision provides sufficient justification for finding no merit with this assignment of error. Specifically, the discussion of *Hendrix* and the fact that a landlord out of possession is not liable for the condition of the premises even where the landlord agrees to make repairs, suggests that violating an OSHA requirement would not render the landlord liable.

**{¶53}** However, even if we are to look at the breach of contract/third-party beneficiary law, Boatwright's claim still fails. Only the parties to a contract or third-party beneficiaries to the contract can maintain an action for damages that is based upon the breach of a contract. Here, the contract, which was a lease, was between Penn-Ohio and ASC. Boatwright clearly was not a party to the contract. Thus, in order for him to be able to maintain the breach of contract claim, he must be a third-party beneficiary to the contract. Ohio uses the "intent to benefit" test to determine whether a third-party is an intended beneficiary. That test requires the promisee to have an intent to benefit a third party; the third party cannot merely be an "incidental beneficiary." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 11-12. There must be evidence that the contract was intended to directly

benefit that third party. *Id.* "Generally, the parties' intention to benefit a third party will be found in the language of the agreement." *Id.*

**{¶54}** As previously indicated, the contract is for the lease of certain bays in a warehouse. There is no evidence, in the contract or elsewhere, that the contract was intended for Boatwright's benefit. Thus, he cannot meet the intent to benefit test. As such, his breach of contract theory fails. This assignment of error lacks merit.

<u>Fourth Assignment of Error</u>

**{¶55}** "The trial court erred to the prejudice of appellant in finding that William Marsteller had no individual liability."

**{¶56}** The trial court specifically found that Marsteller was not individually liable. It reasoned that every action he took was done solely in his capacity as president and employee of ASC, the landlord. 01/30/12 J.E.

**{¶57}** This finding is correct. The Ohio Supreme Court has explained that "the act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." *Tarlecka v. Morgan*, 125 Ohio St. 319, 324, 181 N.E. 450 (1932). The facts of this case show that Marsteller was acting in his capacity as president when he entered into the lease for bay 25 with Penn-Ohio.

**{¶58}** That said, Marsteller can be sued in his individual capacity. An injured party may sue the principal, the agent or both. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 22. However, a principal is vicariously liable only when an agent could be held directly liable. *Id.* Corporations are liable for the acts of their agents in the course of their employment, in the same manner and to the same extent as private individuals. *Cleveland, Columbus & Cincinnati RR. Co. v. Keary*, 3 Ohio St. 201 (1854).

**{¶59}** The problem here is that Boatwright has failed to show that Marsteller owed him a duty. Boatwright consistently discusses the fact that Marsteller should have told Penn-Ohio about the basement under bay 25. The fact that Marsteller allegedly did not disclose the basement does not trigger personal liability. As discussed above, nothing in the law suggests that Marsteller had a legal duty to

disclose the basement. Thus, it does not appear that Marsteller, individually, was under any legal duty to disclose the basement. The analysis in the prior assignments of error clearly demonstrates that this is a commercial lease with a landlord out of possession and the doctrine of caveat emptor applies.

**{¶60}** Thus, the trial court's decision on this issue was correct. This assignment of error lacks merit.

Fifth Assignment of Error

**{¶61}** "The trial court erred in finding that the Ohio Bureau of Workers' Compensation has no claim because the defendants are not liable to plaintiff as a matter of law."

**{¶62}** In the Worker's Compensation context, the right of the bureau to recover its subrogation interest is an independent right, but that right is subrogated in the sense the bureau can recover from the claimant (Boatwright) and/or third party (ASC and/or Marsteller) only if the third party is liable to the claimant in tort. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 23.

**{¶63}** As aforementioned, ASC and Marsteller are not liable to Boatwright for his injuries. Thus, the trial court correctly concluded that the Ohio Bureau of Workers' Compensation has no viable subrogation claim in this instance. This assignment of error lacks merit.

Conclusion

**{¶64}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, P.J., concurs.
DeGenaro, J., concurs.